■ In the Matter of Margaret A. Way, Appellant, v Town of Poughkeepsie et al., Respondents.—In consolidated proceedings to review assessments on certain real property for the tax years 1975-1976, 1976-1977, and 1977-1978, petitioner appeals from an order of the Supreme Court, Dutchess County, dated December 1, 1978, which, after a nonjury trial, dismissed the petitions. Order reversed, and new trial granted on the issue of inequality only, with costs to abide the event. We agree with Special Term that petitioner has failed to carry her burden of proof on the issue of overassessment. On the issue of inequality, however, our reading of the record

suggests that a failure of communication during the trial among the attorneys and the court resulted in an unwarranted restriction on the scope of petitioner's proof. For this reason we have granted a new trial, limited to the inequality issue. The appraisal report introduced at trial by petitioner concluded, on the basis of a sample parcel analysis, that the average ratio prevailing in petitioner's tax district was .62 for the tax years 1976 and 1977. At trial, however, petitioner's attorney "stipulated" to State equalization rates of .8916, .8053 and .73, respectively, for each of the tax years 1976, 1977 and 1978. The effect of such a stipulation was to preclude the petitioner from establishing lower ratios and to limit the proof to the question of whether the subject property was assessed at rates higher than those stipulated (see, generally, Lee & Le Forestier, Review and Reduction of Real Property Assessments in New York, § 1.22; Real Property Tax Law, § 720, subd 3). It appears from the trial minutes that the intended effect of the stipulation, from the respondents' point of view, was to exclude petitioner's sample parcel analysis from consideration at trial. Although petitioner's attorney appears to have agreed to the stipulation limiting his case to proof of inequality based solely upon the State equalization rates, his subsequent attempt to examine the appraiser with respect to the sample parcel analysis suggests confusion about the nature of the stipulation. "Mr. De Rosa [attorney for respondents]: Will we stipulate as to the State rate? Mr. Rubin [attorney for petitioner]: I think we should. Mr. De Rosa: Okay, so we won't be concerned with it. Mr. Rubin: Yes. Mr. Hagstrom [attorney for respondents]: I'd just point out, your Honor, that there is a whole section in here as to assessment equitability; and, if we're into that, we're in for the rest of the day unless we stipulate. The Court: You're stipulating as to the State rate; aren't you? Mr. De Rosa: Yes, I believe so. * * * The Court: Will you stipulate whatever the State rate finally is, that that's the rate that's going to apply? Mr. Hagstrom: Yes. * * * The Court: All right. Mr. De Rosa: All right, then I assume that portion of Mr. Guernsey's appraisal which deals with assessment equitability will be not considered. Mr. Rubin: Why not? Who said that? Your man made a self-serving statement. Mr. De Rosa: Mr. Rubin, I thought we were agreeing we were going to apply the State rate. The Court: Are you going to try to prove the different ratio? Mr. Rubin: No, sir, the ratio is established by stipulation. The theory of my case, Judge, is inequality based upon this ratio. The Court: All right. Mr. De Rosa: But to do that—Mr. Hagstrom: That's fine. It's stipulated. The Court: The ratio will be stipulated. Mr. De Rosa: All right." (Petitioner's attorney then proceeded to examine the real estate appraiser with respect to his sample parcel analysis of the average ratio.) As the court sustained respondents' objection to petitioner's attempted examination of the appraiser, the following colloquy took place: "The Court: We stipulated on ratios, counselor. There is no further proof you can give on ratios. The Court can see what the ratios are. Mr. Rubin: Wait a minute, your Honor. Let's see if we can communicate with each other, please. Maybe I'm wrong, and, if I am, I'll apologize. The Court: Go ahead. Mr. Rubin: I'm not quarreling with the ratio. The Court: You're quarreling with the inequality? Mr. Rubin: The inequality. The Court: Yes. Mr. Rubin: Based upon the market value, these properties instead of assessing them at 89 percent of full market value, they have assessed them, like in the first instance, 38 percent of market value. If your Honor is going to do the mathematical computation himself, I'll not go into it. The Court: I'm supposed to be able to do some mathematical computation. Mr. Rubin: I have no reflexion on your Honor; you know that. The Court: I know. But all you're doing is repeating what's in the ap-

praisal. We don't need that. MR. RUBIN: The appraisal doesn't show the actual percentage. THE COURT: It's a simple question to reach the assessment. MR. RUBIN: I have no further questions. THE COURT: All right, you may step down." It is not at all clear to us that petitioner's attorney agreed to curtail his examination of the real estate expert based on an understanding that his prior stipulation rendered such questioning irrelevant. Rather, it appears that he assumed further questioning would be unnecessary because the court would undertake its own calculations of the comparative ratios on the basis of the sample parcel analysis in petitioner's appraisal report, and thus that the court would entertain evidence of ratios lower than the stipulated rates. In general a party is bound by stipulations made in open court by his attorney (see *Matter of New York, Lackawanna & Western R. R. Co.*, 98 NY 447, 453; *People ex rel. Morgan v Board of Supervisors of Westchester County*, 15 NYS 580, 581; 1 Carmody-Wait 2d, NY Prac, § 3:86). Nevertheless, the rule may be relaxed in the interest of elementary fairness when it is evident on the face of the record that the attorney's understanding of the stipulated terms differs so obviously and radically from the perception of his opponent and that of the court as to warrant the conclusion that there was in effect no stipulation at all (cf. *Magnolia Metal Co. v Pound*, 60 App Div 318; see, generally, 2 Carmody-Wait 2d, NY Prac, § 7:20, p 30). While a trial attorney must ordinarily be taken to mean what he says in open court and petitioner's attorney may not have been entirely without fault in creating an erroneous impression of his intentions, the burden of the misunderstanding, in our opinion, should not be made to fall upon the petitioner, whose substantive rights are ultimately at stake. Rabin, J. P., Margett, Martuscello and Weinstein, JJ., concur.