OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, without costs.
We do not find it necessary to reach the question whether section 115-b of the Domestic Relations Law requires that a consent form recite the effect of a notice of revocation set forth in subdivision 1 (par [d], cl [ii]) of that section or appellant’s contention that a consent form which fails to do so is constitutionally infirm. By reason of appellant’s counsel’s concession that she did not claim to have been misled by the form, the adoptive parents were foreclosed from introducing evidence of her awareness of the provisions of the statute. She is, therefore, without standing to raise the issues referred to above.
Jasen, J. (dissenting). In this important case involving the fundamental right of a mother to her child, the majority summarily refuse to reach the constitutional and statutory questions presented, but rather, simply hold that the mother is “without standing to raise the issues”. Since I believe the appellant mother has standing to challenge the sufficiency of the consent form she executed, I would reach the constitutional and statutory issues and hold that the consent form signed by the natural mother is incompatible with section 115-b of the Domestic Relations Law and, further, that interpreting the consent form as irrevocable violates basic concepts of due process by permanently depriving the natural mother of her child without a clear and convincing showing that she actually intended to surrender or forfeit her rights as a parent.
On the issue of standing, the mother’s right to raise the constitutional and statutory issues is established by the requirements set forth by the Legislature in enacting section 115-b of the Domestic Relations Law which prescribes the conditions to be met in making a private placement consent valid. In my view, there can be no dispute that the consent form in question did not satisfy the statutory requirements.
*930 In this adoption proceeding, contested by the natural mother, the basic facts are not in dispute. The natural mother, a college senior, became pregnant with Daniel C. Ashamed because she was unmarried, she kept her pregnancy a secret from her family. However, because of her Roman Catholic faith and a love for the unborn child, she did not consider having an abortion. She believed her best alternative was to have the child and then place it for adoption, with her parents never knowing of its existence. She did not see a doctor until her sixth month of pregnancy, at which time she selected a physician from the telephone book. At her first examination, she spoke to the physician about her wish to give the child up for adoption. The physician contacted Mr. and Mrs. S., petitioners herein, as prospective adoptive parents. The physician also referred the mother to an attorney.
The baby was born on December 9, 1981, and three days later, as she left the hospital, the mother turned the baby over to a representative of the prospective adoptive parents.
On January 20, 1982, the natural mother signed an “irrevocable consent” form in her attorney’s office. The pertinent part of the form reads as follows:
“I, CLAIRE C., residing at Newburgh, New York, natural (mother) of DANIEL C. do hereby irrevocably consent to the Private Placement Adoption of my (son) DANIEL C., born on December 9,1981. I understand that in the event that this Consent is not executed before a Judge of the Surrogate’s Court of the County of Westchester, then and in that event this Consent shall become irrevocable thirty days after the commencement of the adoption proceeding unless written notice of revocation thereof shall be received by this Court within said thirty days.
“The name and address of the Court in which the adoption proceeding is to be commenced is: Surrogate’s Court, County of Westchester, Address: County Courthouse, 111 Grove St., White Plains, New York 10601.”
After much soul-searching, the natural mother made a decision to revoke her consent to the adoption and, on March 22, 1982, told her family about the child and that *931 she was going to keep him. The same day she called her attorney and told him she was revoking her consent.
On March 24, 1982, the prospective adoptive parents initiated adoption proceedings. Six days later, on March 30,1982, the natural mother formally revoked her consent by filing a notice to that effect with the court. There is no dispute that her notice of revocation was timely under both the statute and the explicit provisions of the consent form.
After a hearing, Surrogate’s Court denied the natural mother’s request to withdraw consent and ordered that the petition for adoption made by the adoptive parents proceed in normal course pursuant to section 115-b of the Domestic Relations Law. That court, while acknowledging that a person “not familiar with the provision of section 115-b of the Domestic Relations Law, could easily infer from the language of the [consent] form that where the consent was not executed before a Judge it could be revoked and upon revocation the parties would be restored to a status quo position”, nevertheless held that “the form obviously must be read in conjunction with the governing statute, and when this is done it is clear that upon revocation the child is not automatically returned to his natural parents.” (115 Misc 2d 130, 133.) Notwithstanding the likelihood of a natural mother being deceived by the language of the consent form, the court found that “no deception was practiced on the natural mother and that she understood the consequences of her act when she executed the consent.” (115 Misc 2d, at p 134.)
The Appellate Division affirmed the order of the Surrogate, holding that the natural mother lacks standing to challenge the constitutionality of the statutory provisions concerning the extrajudicial consent to the private placement adoption. The court predicated its decision on the statement of the natural mother’s attorney, made in her presence in open court, that his client was not claiming that she had been misled by the language of the consent form.
Because, in my view, the statutory provisions and the mandates of due process require greater protection for a natural mother’s right to her child than that afforded by *932 the courts below, I would reverse the order of the Appellate Division and deny the adoption petition.
In 1972, the Legislature enacted section 115-b of the Domestic Relations Law specifically providing for exclusive means by which private adoptions are to be carried out. The statute, entitled “Special provisions relating to consents in private-placement adoptions”, reads as follows:
“1. If a duly executed and acknowledged consent to a private-placement adoption shall so recite, no action or proceeding may be maintained by the consenting parent for the custody of the child to be adopted, and no such consent shall be revoked by such parent if:
“(a) The consent sets forth the name and address of the court in which the adoption proceeding is to be commenced; and
“(b) A copy of such consent was given to such parent upon the execution thereof; and
“(c) The consent was executed or acknowledged before a judge or surrogate of the court in which the adoption proceeding is to be commenced and such consent states that it shall become irrevocable upon such execution or acknowledgment; or
“(d) The consent was not executed or acknowledged before a judge or surrogate of the court in which the adoption proceeding is to be commenced, in which case,
“(i) Such consent shall, if it shall so state, become irrevocable thirty days after the commencement of the adoption proceeding unless written notice of revocation thereof shall have been received by the court within said thirty days.
“(ii) Notwithstanding that such written notice shall have been received within said thirty days, the notice of revocation shall be given effect only if the adoptive parents fail to oppose such revocation, as provided in subdivision three of this section, or, if they oppose such revocation and that court as provided in subdivision three of this section shall have determined that the best interests of the child will be promoted by giving force and effect to such revocation.
“2. At the time that a person appears before a judge or surrogate to execute or acknowledge a consent to adoption, *933 the judge or surrogate shall inform such person of the consequences of such act pursuant to the provisions of this section.
“3. (a) A parent may revoke his consent to adoption only if it has not become irrevocable under the provisions of this section and only by giving notice, in writing, of such action to the court in which the adoption proceeding has been or is to be commenced. Such notice shall set forth the address of the parent and may, in addition, set forth the name and address of the attorney for the parent.
“(b) If, at the time of filing of the petition for adoption, or within thirty days thereafter, the court has received or shall receive such notice of revocation, the court shall promptly notify the adoptive parents, by notice in writing to them and to their attorney, of the receipt by the court of such notice or revocation.
“(i) Such notice to the adoptive parents shall set forth that unless, within ten days from the date of such notice the court shall receive from the adoptive parents notice, in writing, of their intention to oppose such revocation by the parents, the adoption proceeding will be dismissed and that, in case of such dismissal, the court will send to the parents and to the adoptive parents the notice of dismissal, as provided in paragraph (c) of this subdivision.
“(ii) Such notice to the adoptive parents shall further set forth that if, within ten days from the date of such notice, the court shall receive from the adoptive parents notice, in writing, of their intention to oppose such revocation by the parents, the court will, upon notice to the parents and to the adoptive parents, proceed, as provided in paragraph (d) of this subdivision, to a determination of whether such notice of revocation by the parents shall be given force and effect and to a determination of what disposition shall be made of the custody of the child.
“(c) If the adoption proceeding is dismissed pursuant to the provisions of paragraph (b) of this subdivision,
“(i) Written notice of such dismissal shall forthwith be sent to the parent or, if represented by attorney, to the attorney for the parent, and to the attorney for the adoptive parents.
*934 “(ii) Such notice of dismissal shall set forth the name and address of the parent, the name and address of the attorney for the parent, if any, the name and address of the attorney for the adoptive parents.
“(iii) Such notice of dismissal shall further set forth that if the child is not returned to the custody of the parent within ten days from the date of such notice of dismissal, the court will forthwith upon request, in writing, by the parent or by the attorney for the parent, furnish to said parent or attorney so requesting, the names and addresses of the adoptive parents.
“(iv) Such notice of dismissal shall further state that, in the event the custody of the child is not returned to the parent by the adoptive parents upon request therefor, a proceeding to obtain custody may be instituted by the parent in the Supreme Court or the Family Court.
“(d) If, pursuant to the provisions of paragraph (b) of this subdivision, the adoptive parents shall give notice of their intention to oppose the revocation of the parent’s consent,
“(i) The court shall promptly notify, in writing, the parent or the attorney for the parent, if any shall have been named in the notice of revocation, and the attorney for the adoptive parents, that the court will, upon the date specified in such notice by the court, or as soon thereafter as the parties may be heard pursuant to this paragraph, hear and determine whether revocation of the consent of the parent shall be permitted and, in any event, hear and determine what disposition should be made with respect to the custody of the child.
“(ii) The court shall, upon the date specified, take proof as to whether the best interests of the child will be promoted by the return of the child to the parents, or by the adoption of the child by the adoptive parents, or by placement of the child with an authorized agency for foster care with or without authority to consent to the adoption of the child, or by other disposition of the custody of the child.
“(iii) If the court shall determine that the best interests of the child will be served by returning custody of the child to the parent or by placement of the child with an authorized agency or by disposition other than adoption by the *935 adoptive parents, the revocation of consent shall be given force and effect and the court shall make such disposition of the custody of the child as will best serve the interests of the child.
“(iv) If the court shall determine that the best interests of the child will be served by adoption of the child by the adoptive parents, the court shall enter an order denying any force or effect to the notice of revocation of consent and shall dispose of the custody of the child as if no such notice of revocation had been given by the parent.
“(v) In such proceeding the parent or parents who consented to such adoption shall have no right to the custody of the child superior to that of the adoptive parents, notwithstanding that the parent or parents who consented to the adoption are fit, competent and able to duly maintain, support and educate the child. The custody of such child shall be awarded solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular custodial disposition.
“4. Nothing contained in this section shall limit or affect the power and authority of the court in an adoption proceeding, pursuant to the provisions of section one hundred sixteen of this title, to remove the child from the home of the adoptive parents, upon the ground that the welfare of the child requires such action, and thereupon to return the child to a natural parent or place the child with an authorized agency, or, in the case of a surrogate, transfer the child to the family court; nor shall this section bar actions or proceedings brought on the ground of fraud, duress or coercion in the execution or inducement of an adoption consent.”
That statute recognizes only two procedures by which an act of surrender may be effectuated: one being in court, and the other strictly between the parties. The first, a judicial consent, becomes absolutely irrevocable when “executed or acknowledged before a judge of the court in which the adoption proceeding is to be commenced” (subd 1, par [c]), “if” the consent form itself recites that the parent’s consent “shall become irrevocable upon such execution or acknowledgment” (subd 1, par [c]).
*936 The second type of consent, extrajudicial, is not executed or acknowledged before a Judge. In contrast with the judicial consent, this extrajudicial one is not absolutely irrevocable upon its execution. Rather, it only becomes irrevocable 30 days after the commencement of the adoption proceeding, and even then, only when no “written notice of revocation thereof shall have been received by the court within said thirty days.” (Subd 1, par [d], cl [i].) If the natural parent withdraws the consent, the prospective adoptive parents must be informed and, if they do not oppose the withdrawal of consent, the adoption petition will be dismissed and the child returned to the natural parent (subd 3, par [b], cl [i]; par [c]). However, should the prospective adoptive parents oppose the revocation, the court shall conduct a hearing to “determine whether revocation of the consent of the parent shall be permitted and, in any event, hear and determine what disposition should be made with respect to the custody of the child”, based on an evaluation of the best interests of the child (subd 3, par [d], els [i], [ii]).
This adoption statute, being in derogation of natural rights and the common law and existing only by enactment of the Legislature, must be strictly construed. (Carpenter v Buffalo Gen. Elec. Co., 213 NY 101, 104.) The execution of any consent must comply with the legal rights and requirements as defined therein. Thus, the critical issue presented is whether the contents of the extrajudicial consent executed by the natural mother complied with the requirements of the statute.
In my view, an extrajudicial consent form, to be valid and enforceable under the statute and to satisfy basic concepts of due process, must fully inform the natural mother of her rights as well as the consequences of her executing the form, particularly the extent of her right of revocation. It was necessary to inform her that revocation would not, in fact, effectuate a complete withdrawal of her initial consent or entirely undo the drastic consequences thereof. She should have been clearly warned that even if she were timely to revoke her consent, the child would not necessarily be returned. The form which she signed should *937 have unambiguously explained that the prospective adoptive parents could oppose her revocation, and that the fate of the child would then be determined by the court, without any presumption in the natural mother’s favor.
The consent form executed by the natural mother here stated no such thing. It apprised the natural mother of none of the foregoing drastic ramifications of her presumedly tentative consent. Rather, as set forth hereinbefore, the form signed by the natural mother clearly and unequivocally states only that “this Consent shall become irrevocable thirty days after the commencement of the adoption proceeding unless written notice of revocation thereof shall be received by this Court within said thirty days.” (Emphasis added.) (Domestic Relations Law, § 115-b, subd 1, par [d], cl [i].)
Completely omitted from the consent form is any mention of the statutory qualifications to this right of revocation. In the statutory scheme, these qualifications immediately follow the clause recited on the form. The omitted provisions state that: “Notwithstanding that such written notice shall have been received within said thirty days, the notice of revocation shall be given effect only if the adoptive parents fail to oppose such revocation * * * and the court as provided in subdivision three of this section shall have determined that the best interests of the child will be promoted by giving force and effect to such revocation.” (Domestic Relations Law, § 115-b, subd 1, par [d], cl [ii].)
Certainly this clause was inserted in the statute by the Legislature to insure that the natural parent is apprised of her rights and the consequences of her actions before signing a consent to the adoption of her child. Moreover, the initial phrase of subdivision 1 establishes an unambiguous condition precedent to the irrevocability of any private-placement adoption — i.e., “If a duly executed and acknowledged consent to a private-placement adoption shall so recite”. (Emphasis added.) This can only mean that what follows in subdivision 1 — including the afore-quoted clause — must be contained in the consent form in order to satisfy the statutory requirements and, thereby, render the natural mother’s consent irrevocable.
*938 Thus, where a consent form fails to fully apprise a natural mother of her rights and the consequences of her signing a consent to the adoption of her child, the consent is neither a knowledgeable one nor adequate under the statute and, therefore, is without effect. Just as a natural parent who executes an irrevocable consent in front of a Judge or Surrogate must be fully informed by the latter as to the consequences of signing a consent (subd 1), so, too, must a natural parent signing an extrajudicial consent form be fully aware of the legal consequences of her action. “After all”, as Justice Gibbons aptly observed in his thorough and thoughtful dissenting opinion, “a Judge or Surrogate, by definition, is not present to make sure that the parent is truly aware of what is happening. In such a situation, the consent form itself must provide the necessary information. I do not believe that the Legislature would be so sensitive to the need to inform a parent who signs a judicial consent, but would ignore the equally vital need to make certain that a signer of an extrajudicial consent has, at least, the basic legal facts before him or her. In words of Chief Judge (then Judge) Fuld, speaking for a unanimous Court of Appeals faced with a similar apparent discrepancy in a statute: ‘Manifestly, to differentiate between the two situations would not only be completely illogical and unrealistic but would, indeed, serve to thwart the very policy considerations underlying the statute. Absent clear language to that effect * * * we will not ascribe such ambivalent intention to the Legislature’ (Matter of Hogan v Culkin, 18 NY2d 330, 335).” (99 AD2d, at pp 59-60.)
I believe the legislative history of section 115-b makes abundantly clear that the policy considerations underlying the statute were to provide a legal framework for future adoptions with due regard for the rights of the child, the natural mother and the adoptive parents, and to provide adequate safeguards to the natural mother against an improvident decision by her to give up the child for adoption by “assuring that she will be fully informed as to the consequences of her action and of her right of revocation.” (Memorandum in Support, Assemblyman Pisani, Chief Sponsor, Bill Jacket, L 1972, ch 639.)
*939 In addition to holding that the consent form in issue is statutorily deficient, I would also hold that it was constitutionally infirm. In a consensual adoption proceeding, due process requires that the extrajudicial consent form executed by a natural mother be sufficient in form to fully and clearly inform her of the consequences of her action. This was not done here. The consent form did not recite any of the effects of its execution except that it would become irrevocable 30 days after the commencement of the adoption proceeding unless written notice of revocation thereto were given within that period. Appellant understood it to mean precisely what it said — that it would have no irrevocable effect unless she failed to serve a notice of revocation within 30 days. There was no warning that the mere signing of this consent form would constitute a waiver of her constitutional right of primacy over prospective adoptive parents for the right to raise her child. (Cf. People ex rel. Anonymous v New York Foundling Hosp., 17 AD2d 122, 125, affd 12 NY2d 863.)
The right of a mother to her offspring is so fundamental that it cannot be abridged except by the most exacting compliance with due process. (See Matter of Male Infant L., 61 NY2d 420, 427.) A natural parent’s right to raise her child is based upon the most fundamental principles of protected privacy and due process, and absent a clear and convincing showing that a permanent surrender was intended, interference with that right cannot be permitted. (Santosky v Kramer, 455 US 745, 753.) This court has repeatedly recognized and protected, as a constitutional mandate, this interest of the natural parent in remaining the legal parent of his or her child. (See Matter of Marie B., 62 NY2d 352, 358; Matter of Leon RR, 48 NY2d 117.) Accordingly, I strongly believe that a consent form that does not fully and clearly inform the natural mother of the consequences of her action before signing does not comport with basic requirements of due process and is, therefore, without legal effect.
Contrary to the majority’s holding, since the consent form signed by the natural mother was invalid, it matters not whether her attorney made a judicial admission that the natural mother was not misled. In any event, I would *940 not treat the statement made by the mother’s attorney as a judicial admission. In addition to sound public policy reasons for not treating it as such, the record demonstrates that the attorney’s statement was not intended as a judicial admission. The mother testified that when she signed the consent, she believed that her consent was tentative and that it could be revoked unilaterally by her at any time within a certain period. On the witness stand, she stated, without equivocation, “I knew that when I signed it * * * that the adoption would not be completed until I signed a consent in front of the Surrogate.” Also, she said, “I knew that I had a certain amount of time, even after I signed that paper”, and, further, “I knew that * * * I had 30 days in which to revoke the consent.” Although the natural mother said during cross-examination that her attorney had “explained [the consent form] to me”, she never stated what her attorney had told her, or the extent, if any, of her understanding of the statutory provisions as they affected her right of revocation. From the above testimony, it cannot be said that she was fully informed by her attorney or that she comprehended what she was told.
In my view, the consent form that the natural mother signed neither complied with the requirements of section 115-b of the Domestic Relations Law nor satisfied basic concepts of due process, and, therefore, I would reverse the order of the Appellate Division and dismiss the adoption petition.
Judges Jones, Wachtler, Meyer, Simons and Kaye concur; Judge Jasen dissents and votes to reverse in an opinion; Chief Judge Cooke taking no part.
Order affirmed, without costs, in a memorandum.