**Miriam S. GELLER and Martin J. Geller, Plaintiffs,**

v.

**DELTA AIR LINES, INC., Defendant.**

**No. 87 Civ. 6090 (MEL).**

United States District Court,
S.D. New York.

July 12, 1989.

**214**

Talisman & Rudin, P.C., Mineola, N.Y., for plaintiffs; Alan J. Rich, of counsel.

Gallagher & Gosseen, Mineola, N.Y., for defendant; James A. Gallagher, Jr., David O'Brien, of counsel.

LASKER, District Judge.

Delta Air Lines ("Delta") moves for summary judgment on the basis of the Stipulation between the parties of October 30, 1987 ("the Stipulation") and the plaintiffs' (the Gellers') concession regarding direct physical injury at the February 1, 1989 Pre–Trial Conference, which is reflected in paragraph four of the proposed Joint Pre–Trial Order as initialled by the parties. Delta asserts that, whereas the parties stipulated first, that defendant would not contest liability and second, that the law of plaintiffs' domicile (Florida) would govern, the only remaining issue is the amount of damages. Additionally, based upon plaintiffs' acknowledgement at the February 1, 1989 Pre–Trial Conference that they suffered no direct physical injury, Delta argues that the Gellers are unable to satisfy the requirements of Florida tort law as to proof of damages, so that the case should be dismissed. In response, plaintiffs move for a declaratory judgment to vacate the Stipulation and to establish that New York, rather than Florida law, governs the case.

The motions raise three questions. First, is the Stipulation enforceable? Second, which state law governs recovery of damages: Florida as the place of plaintiff's domicile, New York as the locale of plaintiff's residence, or California as the situs of the tort? Third, can the plaintiffs satisfy the proof requirements of the governing state law as to damages?

Delta's summary judgment motion as to the enforceability of the Stipulation and the applicability of Florida tort law is granted. Nevertheless, its motion for summary judgment on the issue of damages is denied because a genuine issue of material fact exists as to whether the plaintiffs can prove that they suffered "significant physical injury" arising from their psychological trauma. The Gellers' motion to vacate the Stipulation is denied.

## BACKGROUND

Plaintiffs, domiciliaries of Florida, were passengers aboard Delta Air Lines Flight No. 810 from Los Angeles to New York on June 30, 1987. Shortly after take-off, the engines' power was cut inadvertently, the aircraft dropped to within 500 feet of the ocean's surface, and passengers were told to prepare for emergency landing by donning life-preservers.

While the Gellers did not seek medical help provided by Delta on the scene or during the airline-provided layover in Cincinnati, they did consult Dr. Marvin Lipman upon return to their residence in New York. Dr. Lipman did not observe physical injuries other than moderate elevations in blood pressure of both Mr. and Mrs. Geller but referred plaintiffs to Dr. Norman Weiss for psychiatric consultation. According to Exhibits H, I, and L, consisting of reports from various physicians, attached to Plaintiffs' Notice of Cross Motion, Mrs. Geller has experienced a rise in blood pressure and Mr. Geller has experienced a vision field loss as a result of the event.

The relevant language of the Stipulation governing the application of Florida substantive law to the Gellers' claim is found in paragraph four, which states, *inter alia,* "Delta agrees that the substantive law of the jurisdiction wherein the plaintiffs were domiciled at the time of their injuries will govern the recoverability of compensatory damages."

## I. ENFORCEABILITY OF STIPULATION

The Gellers move to set aside the Stipulation on the basis of alleged mistake of fact. They claim that their attorney misunderstood the import of the Stipulation, which, because it dictates that the law of plaintiffs' domicile governs, effectively

bars recovery. They assert further that defendant acknowledges that neither party realized that the agreement to rely on the law of plaintiffs' domicile would effectively deny recovery and that the agreement regarding governing law was therefore a mutual mistake of fact. Delta denies that it made any such concession and contends that plaintiffs are accordingly arguing unilateral and not mutual mistake of fact.

At the outset, plaintiffs' motion to vacate the Stipulation is unfounded because they submit no evidence substantiating the claim that their attorney was mistaken concerning the import of the agreement that the law of the Gellers' domicile, Florida, would govern.

Moreover, regardless whether the enforceability of the Stipulation is governed by federal law, as Delta asserts, or New York state law, as the Gellers argue, a presumption exists in favor of the validity of the Stipulation. Because the Stipulation states "It is so ordered," Delta argues that it should be treated as an order or judgment under Federal Rule of Civil Procedure 60(b). While it is not correct to describe the Stipulation as an order or judgment, nevertheless, the 60(b) criteria may be used by way of analogy to evaluate the validity of the Stipulation. Under Rule 60(b), a judgment that has been entered by the court may be vacated only upon a finding of mistake, inadvertence, surprise, or excusable neglect and upon a motion made within a year of the entry of such judgment.

Plaintiffs are unable to make a showing of mistake or excusable neglect that satisfies the Rule 60(b) standard. In support of this point, Delta cites *Dal Int'l Trading Co. v. Sword Line, Inc.*, 286 F.2d 523 (2d Cir.1961), for the proposition that an improvident litigation decision is not a satisfactory basis for relief from a stipulation. In *Dal*, plaintiff entered into a stipulation with a debtor to expunge its claim against the latter, believing that the claim was duplicative of one in a separate admiralty suit. Upon discovering that the claim could not be brought in the admiralty suit, plaintiff moved to set aside the stipulation and to reopen the bankruptcy proceeding against debtor. The Second Circuit affirmed the lower court's denial of plaintiff's 60(b) motion finding that there was no fraud, excusable neglect, or mistake to justify relief from the stipulation. The court observed that "a party who makes an informed choice will not be relieved of the consequences when it subsequently develops that the choice was unfortunate." 286 F.2d at 525. So, here, it would not be appropriate to relieve the plaintiffs from the requirements of the Stipulation simply because their attorney did not understand that recovery would be limited under Florida law. *See also United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir.) (ignorance of law is not sufficient for relief from default judgment per 60(b) when attorney has evidenced a conscious decision), *cert. denied*, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971); *Benton v. Vinson, Elkins, Weems & Searls*, 255 F.2d 299, 301 (2d Cir.) (per curiam) (discovery of statute of limitations after removal to another jurisdiction does not constitute inadvertence so as to satisfy 60(b)), *cert. denied*, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958); *Ginsberg v. Burlington Industries, Inc.*, 500 F.Supp. 696, 699 (S.D.N.Y.1980) (stipulation should not be set aside "except where necessary to avoid clear injustice").

Plaintiffs contend that New York rather than federal law applies and analogize the Stipulation to a contract, arguing that it should be void for mistake. Under New York law, a stipulation is presumed valid unless the party moving to vacate can demonstrate fraud, collusion, mistake, or accident. *See, e.g., Hallock v. State*, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984) (stipulation as contract is invalidated only by fraud, collusion, mistake, or accident); *Matinzi v. Joy*, 96 A.D.2d 780, 465 N.Y.S.2d 731 (party may be granted relief from stipulation on showing of good cause), *aff'd*, 60 N.Y.2d 835, 470 N.Y.S.2d 131, 458 N.E.2d 372 (1983); *Matter of Frutiger*, 29 N.Y.2d 143, 324 N.Y.S.2d 36, 40, 272 N.E.2d 543, 546 (1971) (stipulation will be vacated only on good cause); *Yonkers Fur Dressing Co. v. Royal Ins. Co.*, 247 N.Y. 435, 160 N.E. 778 (1928) (presumption to

uphold validity of stipulation of settlement).

Even if plaintiffs' papers established that their attorney had misunderstood the import of the Stipulation, that proof would not overcome the presumption under New York law that an attorney's word or assent means what it says. *See, e.g., Way v. Town of Poughkeepsie,* 75 A.D.2d 602, 426 N.Y.S.2d 810, 813 (1980); *see also Fox v. Wiener Laces, Inc.,* 105 Misc.2d 672, 432 N.Y.S.2d 811, 815 (1980) ("[T]he belated effort to seek invalidation based upon the attorney's sole unilateral claimed error raises ... a serious question as to whether there was actually a mistake or an afterthought.") (citations omitted). The presumption of the validity of the Stipulation can be overcome only when "the attorney's understanding of the stipulated terms differs obviously and radically from the perception of the adversarial party." *Matter of Daniel C.,* 99 A.D.2d 35, 472 N.Y.S.2d 666, 675, *aff'd,* 63 N.Y.2d 927, 483 N.Y.S.2d 679, 473 N.E.2d 31 (1984). However, it is not necessary to rely on presumptions alone because the record contains no evidence whatsoever establishing or even tending to prove that the attorney did in fact make such a mistake. Indeed, the absence of any affidavit on the subject from the attorney is a glaring omission.

Plaintiffs' motion is denied and defendant's motion to enforce the Stipulation is granted.

## II. GOVERNING LAW OF DAMAGES

■ Effectuation of the Stipulation leads to the application of Florida's substantive law. This proposition is by itself conclusive of the issue before us. However, choice-of-law analysis also indicates that Florida law applies. *Klaxon v. Stentor,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) dictates that the choice-of-law rules of the forum state should govern in diversity suits such as the present. The choice-of-law rule in tort cases heard in New York is that the law of the jurisdiction with the most significant relationship to the parties and the event should govern. *See Babcock*

*v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

To determine which is the most significant relationship, one must evaluate the suit's contacts with the various jurisdictions in terms of the issues raised in the case, the type of tort, and the purposes of the tort rules involved. *Babcock,* 240 N.Y. S.2d at 750, 191 N.E.2d at 284. Plaintiffs argue that New York substantive law should govern since they resided in New York for almost one-half of the year prior to and after the incident, purchased their plane tickets in New York, departed from and returned to New York, and worked and paid taxes in New York. Defendant contends that the law of Florida is applicable because that is the jurisdiction of plaintiffs' domicile. Delta argues that domicile is a more significant contact than residence, of which there may be several, and that plaintiffs vote, pay taxes, and register their cars in Florida.

Under the *Babcock* test, domicile factors more heavily than residence. Per *Murphy v. Acme Markets, Inc.,* 650 F.Supp. 51, 54 (E.D.N.Y.1986), in the absence of a strong interest in applying the law of the tort situs, the state of the plaintiff's domicile is deemed to have the greater interest in the litigation.

As an alternative to the *Babcock* test, plaintiffs argue for the application of the governing law of the state in which the cause of action arose. Invocation of *lex loci delicti* would result in reliance upon the tort law of California in the present suit since the plane's inadvertent descent occurred in the Los Angeles area. Defendant is correct in contending that the situs of the tort in aviation accidents is a fortuity and should not govern the choice of law in the present suit. *See Long v. Pan American World Airways, Inc.,* 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). Finally, the reason for applying California tort law does not weigh heavily in the *Babcock* most-significant-contacts test.

### III. PLAINTIFFS' ABILITY TO SATISFY PROOF REQUIREMENTS OF TORT

While Florida case law formerly allowed recovery only for physical injury, the so-called impact rule has been modified through the dual cases of *Brown v. Cadillac Motor Car Div.*, 468 So.2d 903, 904 (Fla.1985) and *Champion v. Gray*, 478 So.2d 17, 18–19 (Fla.1985). As the law presently stands, a plaintiff must satisfy one of two conditions in order to recover:

(1) plaintiff must "show a direct physical injury," *Brown*, 468 So.2d at 904; or (2) plaintiff must demonstrate that "a claim exists for damages flowing from a significant discernible physical injury when such injury is caused by psychic trauma resulting from negligent injury imposed on another who, because of his relationship to the injured party and his involvement in the event causing that injury, is foreseeably injured." *Champion*, 478 So.2d at 20.

Under the Florida tort standard, there is "no cause of action for psychological trauma alone." *Brown*, 468 So.2d at 904. Instead, to be actionable, the psychological trauma suffered must produce "a demonstrable physical injury such as death, paralysis, muscular impairment, or similar objectively discernible physical impairment before a cause of action may exist." *Id.* In *Champion*, a mother rushed to the scene where her daughter had been struck and killed by a car. The mother dropped dead on the spot. Her husband collected damages for her psychological trauma accompanied by "significant" physical injury (death) resulting from having viewed her daughter's injury.

*Ledford v. Delta Airlines, Inc.*, 658 F.Supp. 540 (S.D.Fla.1987) further illuminates the meaning of "significant" with respect to the standard of "significant discernible physical injury." The *Ledford* court held that plaintiff's squashed and bruised arm, absent any breakage of bone or skin, was not sufficient evidence of "significant" physical injury. Neither was temporary elevation of blood pressure. *Id.* at 542. The court noted further, "Crying episodes, panic attacks and a fear of heart attack are emotional disturbances which, in the plaintiff's case, were perhaps worsened by the stress of the accident. Such complaints, however, do not constitute the demonstrable physical injury that must be shown under Florida law." *Id.*

▮ At the February 1, 1989 Pre–Trial Conference, plaintiffs conceded that neither of them had sustained impact-produced bodily injury contemporaneous with the flight. This concession was grounded on the condition that "neither plaintiff waives any claim of 'physical injury' produced by psychological trauma." *See* Defendant's Notice of Motion, Exhibit A. As a result of this concession, the Gellers precluded recovery under the first branch of the Florida tort standard but preserved the right to pursue damages under the second branch. A genuine issue of material fact exists as to whether plaintiffs are able to satisfy this second branch of the Florida test.

Mrs. Geller presents evidence of sustained hypertension resulting from the psychological trauma of June 30, 1987. As of May 24, 1988, nearly a year after the flight incident, plaintiffs' physician, Dr. Lipman, states, "It seems evident at this point that Mrs. Geller has developed sustained hypertension which requires therapy. Prior to her frightening experience, her blood pressures for the most part had been normal with only slight elevations in the diastolic blood pressure...." Exhibit H to Plaintiffs' Notice of Cross Motion. While *Ledford* held that no relief would be granted for a "[t]emporary elevation of blood pressure not leading to further complications," 658 F.Supp. at 542, Mrs. Geller has introduced evidence of a permanent elevation, which may suffice as "significant" injury under *Brown* depending on its seriousness and its consequences. Moreover, while Delta contends through its expert physician, Dr. Louis J. Vorhaus, that this hypertension preexisted the Delta flight and that plaintiff reports "no symptoms associated with her elevated blood pressure," *see* Exhibit J to Defendant's Notice of Motion, Mrs. Geller's claim of sustained hypertension is at least a genuine issue of material fact not to be decided on the present state

of the record. Mrs. Geller's complaints of poor sleep, fears of flying, appetite disturbance, and social withdrawal do not qualify as physical manifestations of psychic injury but are instead psychological in nature, which are not actionable under Florida law.

Likewise, Mr. Geller's claim of vision impairment arising from his experience of psychological trauma represents a genuine issue of material fact as to whether he has suffered a "significant" injury. Delta's expert physician, Dr. Vorhaus, suggests that Mr. Geller's condition is the result of a preexisting thyroid problem and its opthamologist, Dr. Mortimer F. Shapiro, states, "There were no fundal changes in gross confrontational examination. The visual fields were perfectly normal," *see* Exhibits J and K to Defendant's Notice of Motion. By contrast, Dr. Allen S. Greenbaum, plaintiff's physician, observes, "Mr. Geller has had non-specific visual field loss following this near miss on the airplane. The feeling of disorientation and feeling of peripheral visual field loss, I feel are secondary to this incident. In addition, he had a new onset of optic nerve pallor following this incident, although workup has been negative thus far." Exhibit I to Plaintiffs' Notice of Cross Motion. Because there is conflicting evidence as to whether plaintiff can substantiate his claim of visual field loss, it remains as a genuine issue of material fact. However, as in Mrs. Geller's case, Mr. Geller's claims of sleeplessness, depression, and distractibility do not satisfy the Florida tort standard of physical manifestations of psychological trauma and are accordingly dismissed.

Defendant's motion for summary judgment is granted to the extent indicated and otherwise denied. Plaintiffs' motion is denied.

It is so ordered.