Gibson, J.
The issue is whether the Surrogate’s Court properly set aside appellants’ waivers of citation and consents-to the probate of the propounded will and codicils, so as to permit appellants to pursue their objections to probate. The case is one of first impression.
The appellants, who were decedent’s brothers and his only distributees, met, following decedent’s funeral on June 24, 1965, in Endicott, at the office of the trust company named as executor, with the trust company’s executive vice-president, Mr. Cooper, and its attorney, Mr. Jennings, who has since died, and his associate, Mr. Evans. The trust company had previously delivered to Mr. Jennings the will and codicils and these were read at the meeting. Mr. Jennings also produced and appellants, at his request, signed instruments on a printed form stating that the signatory ‘‘ appears in the Surrogate’s Court of Broome County, N. Y., and waives the issuing and service of a citation in this matter, and hereby consents that the Last Will and Testament of such decedent bearing the date of.....................be admitted to probate by the Surrogate of Broome County, N. Y., without further notice to the undersigned.” The blanks in the printed forms of waiver were completed in Mr. Jennings’ handwriting, whether before or after their execution being in dispute. One appellant testified that Mr. Cooper said that execution of the paper was necessary to record his presence at the conference; the other that he understood the purpose was to expedite payment of decedent’s bills, some of which he had paid and some *147 of which he had guaranteed; and Mr. Cooper to a large extent confirmed this, stating that such was Mr. Frutiger’s “ primary ” concern when, by telephone, the conference was arranged. The Surrogate made no specific findings in respect of this evidence, but did find generally no proof of fraud. It was undisputed that neither Mr. Cooper nor either attorney explained the nature and effect of the waiver and consent; and it was undisputed, and, indeed, confirmed by proponent’s witnesses, and found by the Surrogate, that Mr. Cooper inaccurately stated that, “ We need these to probate the will.” Concededly, the will was somewhat complicated; Mr. Evans said that he did not completely understand it at the time; and the bequests given to appellants by the will were decreased by the first codicil. Although copies of the will and codicils were given appellants, they were not supplied with copies of the waivers and consents. As bearing upon appellants’ understanding-— or lack of understanding-— of the nature, purpose and effect of the waivers, it seems significant that on leaving the conference appellants immediately went to Binghamton to consult an attorney as to the validity of the will; that appellant Ernest D. Frutiger, after returning to his home in Pennsylvania, consulted a Philadelphia lawyer; that both lawyers remained in the case; and that neither upon the first consultation nor at any time within the period of nearly 45 months that-passed before the waivers were filed did either appellant advise his attorney of the -signing of the documents in issue. Neither, at any time during this long period nor in the course of the extended negotiations that followed the filing of appellants’ objections, did proponent’s counsel advise appellants’ attorneys of the waivers and consents to probate, reposing first in Mr. Evans ’ file and later in that of his associate counsel. The probate petition was filed March 4, 1968, some 32 months after execution of the waivers, and a citation was issued and served on appellants, this being, of course, an unnecessary step if there existed valid waivers. Appellants on June 28, 1968 filed objections ; conferences continued, at least two in the presence of the Surrogate; but there was still no mention of the waivers, which were finally filed on March 18, 1969.
The Surrogate held that “ [1] ike any agreement between parties, a waiver can by agreement be withdrawn and canceled. The conduct of the attorneys for the proponent from November, *148 1965, when the first conference was held attended by counsel for the brothers, during which it appeared that objections to the will were being contemplated, and all of the subsequent acts of counsel for the proponent and counsel for the Frutiger brothers, have been consistent with only one conclusion, namely, that the waivers and consents to probate were withdrawn and no longer valid between the parties.” (62 Misc 2d 163, 170-171.) In reversing, the Appellate Division found that “ the delay in producing and filing the documents involved is more rationally explained by the explanation that they were forgotten about than inferring such an agreement ” (35 A D 2d 755); but the explanation suggested is not inferable from the record. Indeed, Mr. Evans, who, after Mr. Jennings’ death, was the only witness with knowledge of the fact, did not at any time testify that the documents were forgotten or overlooked; nor did he otherwise explain this strange and unusual omission. Rather, he said that he tendered the waivers for filing in the Surrogate’s Court on September 15, 1965, when he filed the will and codicils, but was told that they could not be filed in the absence of any pending proceeding; and he said further that ‘ ‘ in the course of talking with ’ ’ his cocounsel, who came into the case much later, ‘ ‘ I may have mentioned them, but whether I did or not, I don’t recall. ’ ’
The statute provides for the filing in any proceeding of a waiver of issuance and service of process, which shall have the effect of a notice of appearance (SCPA 401, subd. 4) but makes no provision in a probate proceeding for the consent to probate, which, by custom, is usually embodied in the same instrument (see, e.g., 25 Carmody-Wait 2d, New York Practice, § 149:183, p. 171), as it is in this case. The document serves, first, to confer jurisdiction, as the maker “ appears ” in the Surrogate’s Court and “ waives the issuing and service of a citation ”, and, second, and upon such appearance, functions asa“ consent ” to probate, ‘ ‘ without further notice ’ ’.
In this context, and absent any demonstrable consideration or other contractual element, the consent is clearly and essentially a stipulation made by a party to the proceeding; and it must be treated in accordance with the rules governing stipulations in actions generally.
*149 In dealing with consents of this nature, in the Surrogate’s Courts and at the Appellate Divisions, the courts have usually required proof of fraud or overreaching as a condition to a party’s withdrawal of his stipulated consent; hut this rule, if such it is, has been applied upon motions made after entry of a decree resting upon the consent and thus requiring vacatur of the decree as well.[1] The only decision to the contrary, Matter of Sturges (24 Misc 2d 14), seems to have been decided solely on the authority of Matter of Pearson (19 Misc 2d 833) and Matter of Freundlich (58 N. Y. S. 2d 679); but, as has been noted (infra, n. 1), the application in each of these cases was made postdecree and thus warranted a stricter test. A well-considered approach to a predecree application is to be found in Matter of Bissell (57 Misc 2d 220), in which the Surrogate, without determining, on the preliminary application, ‘ ‘ the extent to which misrepresentation, fraud, mistake, misunderstanding, etc., are necessary to permit a withdrawal” (p. 221), directed that the various movants make individual applications, so that each might be considered upon its merits; and subsequently granted such of the applications thus made as demonstrated the movants’ misunderstanding of the term ‘ ‘ distributee ’ ’ as applied to them, the Surrogate finding that no prejudice would ensue upon the granting of the applications (58 Misc 2d 246, 247).
We need not rest our decision on the authorities developed in the Surrogate’s Courts, however, considering, as we do, that the consent to probate, made following or simultaneously with an appearance in the proceeding, is essentially a stipulation and to be treated accordingly. The rule has been succinctly stated thus: “The court has control over stipulations and power to relieve from the terms thereof when the parties can be placed *150 in statu quo. But the stipulation will not be destroyed without a showing of good cause therefor, such as fraud, collusion, mistake, accident, or some other ground of the same nature ”. (Campbell v. Bussing, 274 App. Div. 893.) Our citation to Campbell in Chisholm-Ryder Co. v. State of New Torh (19 N Y 2d 848) did not, of course, limit application of the rule to mistakes mutual in nature, such as that involved in our decision. That the principle is not thus limited was recognized in Foote v. Adams (232 App. Div. 60, 63), in which relief was granted from the Attorney-General’s unilateral mistake or misunderstanding ; and the court cited respectable authority in holding: “ ‘ It is sufficient if it appears that either party has inadvertently, unadvisably or improvidently entered into an agreement which will take the case out of the due and ordinary course of proceeding in the action, and in so doing may work to his prejudice. ’ (Van Nuys v. Titsworth, 57 Hun 5.) 'Where both parties can be restored to substantially their former position the court, as a general rule, exercises such power if it appears that the stipulation was entered into inadvisedly or that it would be inequitable to hold the parties to it.’ (Magnolia Metal Co. v. Pound, 60 App. Div. 318.) The circumstances in this case ‘ reveal that the stipulation should not be held, in order to promote justice and prevent wrong. ’ (Yonkers Fur Dressing Co. v. Royal Ins. Co., 247 N. Y. 435, 445.) ”
In the case before us, the facts warrant the Surrogate’s further consideration of the application, treated as an application for permission to withdraw the stipulated consent to probate. It is clear that the proponent has not changed its position by reason of the waiver and that the status quo remains (see Campbell v. Bussing, 274 App. Div. 893, supra). Indeed, proponent’s omission, over a period of years, to make known the existence of the waivers, procured in the presence of its officer and its attorney, served to preserve the status quo and to contribute to any prejudice that has ensued. The papers before us do not include appellants’ objections or any factual or other demonstration of merits and of a reasonable probability of success, and such' a showing is necessary upon the application addressed to the Surrogate’s discretion (see Matter of Westberg, 254 App. Div. 320, supra) and may be made upon remand.
*151 The order appealed from should be reversed, with costs to all parties appearing and filing briefs, payable from the estate, and the case remitted to the Surrogate’s Court of Broome County for further proceedings in accordance with this opinion.

. The applications were made postdecree in Matter of Westberg (254 App. Div. 320, app. dsmd. 279 N. Y. 316, mot. for rearg. den. 283 N. Y. 589); Matter of Teller (277 App. Div. 937); Matter of Hinderson (4 Misc 2d 559, affd. 2 A D 2d 682); Matter of Baldwin (3 A D 2d 635); Matter of Hawley (6 A D 2d 594); Matter of Freundlich (58 N. Y. S. 2d 679); Matter of White (16 Misc 2d 22); Matter of Pearson (19 Misc 2d 833); Matter of Celantano (31 Misc 2d 727); and see, generally, 25 Carmody-Wait 2d, New York Practice, § 149:184; 1A Warren’s Heaton, Surrogates’ Courts, § 73, par. 4A. In Matter of Isaacs (154 Misc. 601, affd. 245 App. Div. 728) the determination was purely factual.