OPINION OF THE COURT
Maurice Harbater, J.
“[I]t is common knowledge that a Landlord cannot make repairs without receiving rents from the Tenants.”
This is a motion brought by respondents landlords to vacate and set aside a written consent order dated July 1, 1982.
In the consent order, the respondents agreed to make numerous necessary repairs to the premises within 45 days.
This proceeding was commenced jointly, in one H.P. matter, by 35 tenants, requesting of this court an order directing the owners to correct many violations.
On July 1, 1982, the respondents executed a consent order in open court to remove the “C” violations forthwith; the “B” violations within 30 days; and the “A” (nonhazardous) violations by August 15, 1982.
The owner now asserts “that approximately one-half of the Tenants in the building are not paying rent and have declared a rent strike.” The respondents further allege *155 “that it is impossible to do the work to complete the violations without rent money” and that the “Landlord should not be bound by its Consent Order * * * Landlord cannot possibly do the work without receiving rent money.”
Therefore, the respondents owners seek to be relieved of such obligation as required by the court’s order.
They argue that the tenants agreed to pay rent so as to induce the landlords to agree to make the repairs. They further state that due to the petitioners tenants failure to pay rent, there is an “impossibility of performance on its part of the agreement.”
Actually, what the landlords consented to was not a stipulation but an order of this court. The order was executed by the respondents owners, the Department of Housing Preservation and Development, and this court.
The landlords protest their inadequate rent collections, but fail to state why, when the tenants were paying their rent, the landlords allowed over 130 record violations to accumulate and why they did not then deliver to the tenants a decent, habitable place to live.
The petitioners tenants did not sign the order nor agree in the court’s order to pay rent. That was not the nature of the proceeding. Nor does this court find from its notes or memory any promise by the tenants to pay rent.
Even if there were an oral agreement allegedly “made in open court,” it was not in writing or reduced to the form of an order and, therefore, would not be binding. (See CPLR 2104; Matter of Dolgin Eldert Corp., 31 NY2d 1.)
The tenants came to court for only one purpose, and that was to obtain an order directing the owners to correct violations!
The function of a tenant-initiated action is to determine whether physical conditions exist which are violations of the various housing laws, and how long the landlord shall have to correct them. Nothing more.
An examination of the tenant action statutes (Administrative Code of City of New York, § D26-51.01, subds [g], [h], [i]; Housing Maintenance Code, art 53 [Administrative *156 Code, § D26-53.01 et seq. (the injunctive relief article)]; Multiple Dwelling Law, § 306 [injunctive relief]), reveals nothing to support the respondents’ position that repairs are conditioned upon the tenants paying rent.
Sections D26-10.01 and D26-51.03 of the Housing Maintenance Code state that the owner shall be responsible for all violations and for keeping the premises in good repair. Even a breach of law by a tenant does not absolve an owner from the obligation to repair.
Subdivision c of section D26-10.03 of the Housing Maintenance Code states: “c. The fact that a tenant is or may be liable for a violation of this code or any other law or is found liable for civil or criminal penalties does not relieve the owner of his obligation to keep the premises, and every part thereof, in good repair.” (Emphasis added.)
Thus, a failure by a tenant to pay rent — even if it were wrongful — is a breach of contract and does not permit an owner to shirk his lawful obligations. Clearly, the owner could bring a summary proceeding for nonpayment of rent!
The law does give consideration to an owner who has problems in obtaining necessary funds in the form of mitigation or remission of his civil penalty liability, if he can show by “competent proof, pertinent financial data, and efforts made to obtain necessary materials, funds or labor” (Housing Maintenance Code, art 51, § D26-51.03, subd [b], par [2]; emphasis added). '
That subdivision gives the court discretion, if sufficient mitigating circumstances exist, to reduce the penalty, but “may condition such remission upon a correction of the violation with a time period fixed by the court.” (Emphasis added.)
What the above language demonstrates is that the owner must correct, even if he can prove an inability to obtain funds. He may be spared a civil penalty, but he must still correct. Correction of violations are paramount and are unconditional obligations!
Here, the respondents submit no proof whatsoever regarding their inability to obtain funds nor whether the alleged nonpayers are petitioners in this proceeding. They do not state what efforts, if any, they have made to collect *157 rents nor how long this alleged nonpayment has continued and in what amounts. Respondents do not state what items are uncorrected and what the cost of such correction is. They do not even state what efforts they have made to rent their vacant apartments.
All that the respondents are alleging is a conclusory statement that approximately half of the tenants residing in these premises are withholding rent and that the owners, therefore, should be relieved of their obligation to obey the court’s order and not have to make the required and needed repairs.
The fundamental rule of law is that a stipulation or consent order is to remain undisturbed unless a party seeking vacatur can show “good cause therefor, such as fraud, collusion, mistake, accident, or some other ground of the same nature”. (Matter of Frutiger, 29 NY2d 143, 150; Campbell v Bussing, 274 App Div 893.)
No grounds have been shown to warrant the vacating of the consent order.
The respondents place great weight on the contractual theory of impossibility or frustration of performance as a basis for relief from the consent order.
Firstly, the consent order is not a stipulation. Such a concept is inappropriate to an order of the court.
Secondly, even if the standards applied to vacatur of a consent order are those applicable to contracts, the doctrine of impossibility and frustration does not apply, even if it be true that the tenants are withholding rent from the owners.
In 407 East 61st Garage v Savoy Fifth Ave. Corp. (23 NY2d 275, 281), Judge Breitel stated: “Generally, however, the excuse of impossibility of performance is limited to the destruction of the means of performance by an act of God, vis major, or by law * * * Thus, where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused” (emphasis added).
The court finds that the owners’ obligations under the consent order to repair, as well as under the law, were not *158 conditional in any way upon the payment of rent. Rather, the consent order was an unconditional obligation to make repairs.
For these reasons, the respondents’ motion is denied and the stay is hereby vacated.