■ RUBY DEVELOPMENT CORPORATION, Respondent, v CHARRIM DEVELOPMENT CORPORATION et al., Appellants.—In an action, *inter alia,* to recover damages for breach of contract, in which the plaintiff moved to vacate a stipulation of settlement, the defendants appeal from an order of the Supreme Court, Nassau County (Wager, J.), entered March 30, 1989, which granted the plaintiff's motion.

Ordered that the order is affirmed, with costs.

In October 1986 the plaintiff Ruby Development Corporation (hereinafter Ruby) agreed to sell and the defendants agreed to buy an approximately 83-acre parcel of land located in Ulster County, New York, for $819,000. Ruby agreed to take a purchase-money mortgage of $639,000. In addition to the contract of sale, the parties entered into several other contracts which essentially provided that Ruby would act as the general contractor in developing the land by constructing new homes which would eventually be sold to the public. In order to carry out the intentions of the parties, they agreed that the defendant Charrim Development Corporation (hereinafter

Charrim) would obtain the necessary financing to construct the new homes and that Ruby would execute a document wherein it would agree to the subordination of its purchase-money mortgage to facilitate Charrim's obtaining the necessary financing.

Thereafter, difficulties arose between the parties and Ruby commenced the instant action in August 1987.

However, Charrim commenced its own action against Ruby in the Supreme Court, Ulster County, on or about May 16, 1988, seeking an injunction to compel Ruby to sign certain documents evidencing its agreement to subordinate its purchase-money mortgage to the construction financing. In its verified complaint in the Ulster County action, Charrim alleged: "8. [Charrim] has further obtained a commitment for construction loan mortgages from Morsemere Federal Savings and Loan Association of 300 Broad Avenue, Palisades Park, New Jersey, ('Morsemere'), which commitment requires that [Ruby] execute instruments evidencing subordination of [Ruby's] aforesaid purchase money mortgage". Charrim subsequently moved in the Ulster County action for a temporary injunction to compel Ruby to sign the subordination agreements. In support of that motion, Charles DiNolfo, Charrim's president, submitted a sworn affidavit to the court which stated: "8. [Charrim] *has obtained a commitment* from Morsemere Federal Savings and Loan Association, 300 Broad Avenue, Palisades Park, New Jersey ('Morsemere'), *for construction loan mortgages totaling TWENTY EIGHT MILLION FIVE HUNDRED SEVENTY-NINE THOUSAND ($28,579,000.00) DOLLARS,* which commitment requires certain subordination documents to be signed by the defendants, copies of which are annexed hereto as Exhibit D. An initial THREE HUNDRED THOUSAND ($300,000.00) DOLLARS will be released by Morsemere immediately upon the signing of the subordination documents so as to enable [Charrim] to commence construction in accordance with the permits and approvals granted by the Town of Ulster and within the time limitations imposed" (emphasis added).

The Supreme Court, Ulster County (Torraca, J.), by order dated July 18, 1988, directed Ruby to sign the aforementioned subordination agreements, but at the same time directed Charrim to obtain a bond in the amount of $650,000 to indemnify Ruby in the event that it was later determined that Ruby was not required to sign the subordination agreements.

On July 27, 1988, a conference was held between the parties at the Supreme Court, Nassau County, before Justice Wager. After extensive negotiations, the parties entered into a stipu-

lation of settlement which was subsequently "So Ordered" by the court, in which the parties agreed that the Ulster County action and the instant action were "withdrawn and discontinued without prejudice" subject to certain "conditions and understandings". One of the "conditions" and/or "understandings" of the stipulation of settlement was: "5. [Charrim] shall furnish [Ruby] with a copy of the commitment letter obtained from the lending institution immediately upon receipt thereof and shall advise [Ruby] of the approximate time of commencement of construction."

Thereafter, construction of the units had not commenced and, upon Ruby's inquiry, it discovered that Charrim never, in fact, had received a commitment for the construction loan of $28,579,000 as it had represented in its verified complaint and sworn affidavit of its president in the Ulster County action. As a result, Ruby moved to vacate the stipulation of settlement. In the order appealed from, that motion was granted.

We find that Charrim materially misrepresented that it had received a commitment letter for the construction loan in the amount of $28,579,000. Although the stipulation of settlement made in open court pursuant to CPLR 2104 does not specifically refer to a commitment letter, Charrim represented that it obtained the commitment in its verified complaint and in the affidavit of its president filed in the Ulster County action. According to the record, Charrim has not demonstrated that it ever had a commitment letter as its president swore it did. Clearly, Ruby relied on this misrepresentation. Hence, the Supreme Court properly vacated the stipulation of settlement (see, *Hallock v State of New York,* 64 NY2d 224, 230; *Matter of Frutiger,* 29 NY2d 143, 149-150; *Abady v Abady,* 149 AD2d 448, 449; *Cirrincione v Joseph A. Bruno, Inc.,* 143 AD2d 722, 723; *Schweber v Berger,* 27 AD2d 840).

In light of the foregoing, we need not consider the parties' remaining contentions. Rubin, J. P., Eiber, Rosenblatt and Miller, JJ., concur.