OPINION OF THE COURT
Judith J. Gische, J.
Respondent undertenant, Dolores Moya, seeks to set aside court-ordered stipulations and all judgments, orders and determinations made by Housing Court Judge Arthur A. Scott in this proceeding. She seeks a new trial on the underlying holdover petition. The petition alleges that there are unauthorized occupants living in apartment No. 2-A (apartment) located at 12 Arden Street, New York, New York (Building). Ms. Moya is the sister of Mercedes Vasquez, the tenant of record. Ms. Moya claims that she lived in this rent-stabilized apartment with Elys Vasquez, her niece and daughter of the lease tenant, for more than two years (since 1991) and she, therefore, *477 is entitled to secession rights. Ms. Moya claims that she occupied the apartment with her niece as a family unit.[1]
On August 23, 1993 this proceeding was tried before Judge Scott who issued a decision and judgment of possession and a money judgment for $1,540. The court stated in its decision, "Tenant’s claim on succession rights is norimeritorious. No documentary proof.”
Ms. Moya claims that the "trial” took place without her participation. She claims that she went to court on August 23, 1993, expecting to work out an agreement. There had been prior discussions between petitioner and Mercedes Vasquez about making Ms. Moya and Elys Vasquez the lease tenants. Instead of reaching a settlement, from the back of the courtroom, Ms. Moya heard Judge Scott enter judgment against her. At that time she presented herself to the Judge who allowed her to speak and then issued judgment against her. No transcript of the trial record was put before the court on this motion.
Two days later respondent returned to court, seeking to set aside the trial decision. Ms. Moya claims that she was approached by Mr. Watson who told her that he was a lawyer related to Judge Scott and that he could help her stop the eviction if she paid money. Ms. Moya paid Mr. Watson $150. The order to show cause was thereafter signed.
On September 28, 1993 Judge Scott granted the order to show cause and the judgment after trial was vacated. Mr. Watson then arranged for a lawyer, Mr. Harry Bernstein, to further represent Ms. Moya in the proceeding.
On November 29, 1993 the parties settled the case. The stipulation of settlement provided that Ms. Moya would pay all outstanding arrears and that petitioner would then consider her application to become the tenant of record. The stipulation reflected that $2,310 of the $2,715 then due and owing was paid. Ms. Moya states that she had given Mr. Watson all the rent monies due and owing but that Mr. Watson failed to give all of the rent money to the landlord. Although the agreement bears Ms. Moya’s signature, Ms. Moya does not speak, read or write English. There is no indication that the stipulation had been read to respondent in the Spanish language.
*478 Respondent claims that in December 1993 Mr. Watson asked her for another $405 dollars, which she gave him to pay the landlord. Ms. Moya claims that Mr. Watson did not turn over such money until March 1994 and that he improperly retained other rent monies that she gave him to pay the landlord.
A further stipulation was made on July 15, 1994. Petitioner states that this second stipulation had been made after negotiation with Ms. Moya’s attorney. Ms. Moya claims that she did not know about the stipulation. It was not signed by her. The second stipulation concerned the payment of monies. Certain monies were paid under the stipulation and certain monies were to be paid in the future. According to the stipulation certain funds were tendered that day by personal check. Ms. Moya states that she did not give Mr. Watson any personal checks to give the landlord. The check delivered to the landlord bounced. Ms. Moya states that Mr. Watson again failed to deliver all of the money she gave him intended for rent.
In September 1994 petitioner moved to restore the judgment of possession for noncompliance with the payment stipulation made in July 1994. By decision and order dated September 28, 1994 that motion was granted. Respondent did not hear from Mr. Watson or Mr. Bernstein again. In November 1994 Ms. Moya moved pro se before Judge Scott to vacate the judgment of possession. That motion was denied. Respondent, now represented by a new attorney, brings the instant order to show cause.
DISCUSSION

a. Standard of Review

In reviewing decisions and orders of a Judge of coordinate jurisdiction, this court does not act as an appellate court. Mere errors of law are not sufficient for the court to vacate another Judge’s determination. Such errors are correctable by way of appeal. (CCA art 17; Public Serv. Mut. Ins. Co. v McGrath, 56 AD2d 812 [1st Dept 1977].)
On the other hand there are circumstances in which a court can vacate its own decisions, orders and/or judgments. (CPLR 4404, 5015.) There are also circumstances in which the court should set aside court-ordered agreements. (Hallock v State of New York, 64 NY2d 225 [1984]; Teitelbaum Holdings v Gold, 48 NY2d 51, 54 [1979]; Matter of Frutiger, 29 NY2d 143 [1971].)
Motions to set aside the court’s determination are usually made before the Judge who made such determination. (CPLR *479 4405.) Judge Scott’s suspension from his duties as Housing Court Judge makes him unavailable to determine this motion. This court has been assigned to preside over Judge Scott’s pending cases and, therefore, has the power and discretion to review Judge Scott’s decisions and orders on any of the grounds on which Judge Scott could review such decisions and orders had he been available. (See, e.g., CPLR 2221.)
CPLR 5015 (a) sets forth a list of circumstances when a motion to set aside a judgment should be granted. This list, however, is not exhaustive. It is in addition to the inherent power of the court to control its own judgments and orders. (Paramount Communications v Gibraltar Cas. Co., 212 AD2d 490 [1st Dept 1995]; Seigel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5015:ll.)
It is also well settled that, although stipulations of settlement are not lightly set aside by the court, they may be set aside based upon fraud, collusion, mistake, accident or another ground of a similar nature. (606 Operating Corp. v Dunn, NYLJ, Jan. 20, 1995, at 25, col 3 [App Term, 1st Dept].)
It is black letter law that a litigant in a civil action or proceeding is entitled to a fair trial. If a party is denied a fair trial, then a new trial may be ordered. (Rohring v City of Niagara Falls, 192 AD2d 228 [4th Dept 1993]; Scala v Greyhound Lines, 149 AD2d 327 [1st Dept 1989].)[2] The right to a fair trial exists regardless of the merits of the underlying case. (Habenicht v R.K.O. Theatres, 23 AD2d 378 [1st Dept 1965].)
A review of the fairness of a trial may be made at the trial court level. A presiding Judge may mistry a case before its conclusion where it is apparent that misconduct by either an adversary or some third party makes it impossible to get a fair determination. (CPLR 4402.) Misconduct or intemperate comments by a Judge may also be the basis for the trial court to order a new trial. (Eisner v Daitch Crystal Dairies, 27 AD2d 921 [1st Dept 1967]; Habernicht v R.K.O. Theatres, supra; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4402.) This court can, therefore, review the proceedings before Judge Scott and if it finds for any reason whatsoever that a fair trial did not occur, it can vacate the judgment and order a new trial.

*480
b. The Facts of This Case

This case arises in the aftermath of the arrest and indictment of Judge Scott and Euclid Watson in connection with claims that Judge Scott with the assistance of Mr. Watson took bribes to influence the outcome of proceedings. Neither Judge Scott nor Mr. Watson have been tried and/or found guilty of the charges against them.
It is undisputed in this record however that Mr. Watson, who is not an attorney, took money from Ms. Moya on the representation that he was an attorney and that by virtue of his special relationship with Judge Scott he could get the Judge to sign an order to show cause stopping Ms. Moya’s eviction. The court finds that Mr. Watson’s improper solicitation of funds on the false assertion that he was an attorney and upon the further assertion that he could influence the outcome of the court’s decision based upon his personal relationship with the Judge, an egregious perversion of our American system of jurisprudence and completely antithetical to basic notions of fairness and due process. (See, Scala v Greyhound Lines, 149 AD2d 327 [1st Dept 1989], supra.) Such actions indelibly taint and render inherently unreliable all court proceedings thereafter.
Petitioner argues that because Ms. Moya participated in bribery, she has unclean hands and she is not entitled to the relief that she requests here. Ms. Moya, instead, portrays herself as a victim of Mr. Watson and possibly others in connection with her efforts to save her home. Criminal prosecution of Ms. Moya is for the District Attorney’s office to consider. Regardless of whether Ms. Moya is a victim or a participant, the court cannot knowingly let stand a determination that was paid for and/or the product of improper influence. The court reaches this conclusion regardless of whether Judge Scott would have otherwise signed and ultimately granted the original order to show cause. Even legally correct decisions, if bought, cannot be tolerated. While the court is mindful that petitioner may have been an innocent party, it would be improper for the court to let such decision stand.
Mr. Watson’s actions taint not only the August 25, 1993 order to show cause, but all subsequent proceedings as well. The subsequent stipulations, orders and judgments are all suspect because they are the consequence of improper action.
The further issue before the court is whether the trial decision, granting petitioner a judgment of possession should *481 stand, because it was made prior to Mr. Watson’s involvement. For the reasons set forth below this court holds that the judgment of possession should likewise be vacated.
Ms. Moya’s account of the proceedings suggest that there was no trial at all. Ms. Moya claims that petitioner did not prove a prima facie case in her presence, that she was never given an opportunity to hear or cross-examine petitioner’s witnesses (if indeed any witnesses testified) and that she was not given an opportunity to present her proof. Ms. Moya indicates that she was late in getting to Judge Scott’s courtroom and there is some indication that Judge Scott may have handled the proceeding as a default. Petitioner, who presumably was present at the time of trial, does not confirm or dispute respondent’s account. If Ms. Moya’s account is accurate, then respondent was denied a fair trial.[3] (Matter of Silvestris v Silvestris, 24 AD2d 247 [1st Dept 1965] [pro se litigant should be advised of right to cross-examination]; Ajaeb v Ajaeb, 276 App Div 1094 [2d Dept 1950] [party has a right to be present at trial of civil case]; City of New York [Sullivan] v Sullivan, 246 App Div 55 [1st Dept 1935] [a litigant is entitled to cross-examine witnesses who testify against him or her].)
In any event even if the trial that took place before Judge Scott on August 23, 1993 was entirely fair and proper, the subsequent improper actions permanently effected the parties’ rights that otherwise follow a trial decision. The August 25, 1993 order to show cause prevented respondent from timely exercising any right to appeal, which is now permanently lost to her. (CCA art 17; CPLR art 55.) Moreover respondent may have otherwise been entitled to have the August 25, 1993 order to show cause granted. There are circumstances in which the trial court should reopen a case after trial for the introduction of additional evidence. (Park Ave. S. Assocs. v Olnowich, NYLJ, July 24, 1995, at 29, col 3 [App Term, 1st Dept].) If the "trial” was really a default, respondent could have had her order to show cause evaluated under the less stringent standard of excusable default and meritorious defense. (CPLR 5015.) The default at the time the order to show cause was brought would have been de minimis. Now over two years have passed and rights have been lost and circumstances changed.
Petitioner argues that respondent’s underlying defenses have no merit. As previously stated the right to a fair trial exists *482 regardless of the merits of the underlying case. (Habenicht v R.K.O. Theatres, supra.) In any event the court does not agree that respondent failed to show any "meritorious defense”. If Elys Vasquez has succession rights, then Ms. Moya, if she can establish that she lives with Ms. Vasquez, may have derivative rights of occupancy. (RSC [9 NYCRR] § 2523.5 [b]; Real Property Law § 235-f.) The court does not believe that there is any "standing” problem as suggested by petitioner.
CONCLUSION
Respondent’s motion to set aside all proceedings before Judge Scott is granted and the proceedings are hereby set aside in their entirety.

. In December 1994 Elys Vasquez joined the Armed Forces. A person engaged in active military duty who temporarily relocates does not lose their status as a rent-stabilized tenant. (Rent Stabilization Code [RSC] [9 NYCRR] § 2523.5.)

. Petitioner does not claim that this motion is untimely and therefore the court finds that such argument has been waived. (CPLR 4404.)

. The court would have been greatly assisted by the trial transcript to evaluate Ms. Moya’s claims of what occurred at trial. Because petitioner does not really dispute respondent’s account, the court will accept it as accurate.