FIRST DEPARTMENT, APRIL, 2000

(April 4, 2000)

■ In the Matter of the Estate of SHAMAR K. WRIGHT, Deceased. DEIRDRE WRIGHT, as Administratrix, Appellant; FRANKLIN SALKEY, Respondent. [706 NYS2d 35] —Order, Surrogate's Court, Bronx County (Lee Holzman, S.), entered August 2, 1999, which denied that portion of petitioner's application to deem a waiver and consent valid and to dismiss the objections and ordered a trial, unanimously reversed, on the law, with costs, application to deem a waiver and consent valid and to dismiss the objections granted.

Shamar Kareem Wright was born on January 13, 1996 and died on November 23, 1996. During his brief life, Shamar was intermittently a patient at Montefiore Medical Center for treatments which gave rise to claims for negligence and which were ultimately settled for $240,000 for his conscious pain and suffering. Shamar's mother, Deirdre Wright, commenced a paternity proceeding against Franklin Salkey who, once a paternity test established that he was the biological father, finally admitted that he was Shamar's father on November 8, 1996. Salkey never made any support payments other than in the form of claimed cash payments to Wright or the babysitting services of his sister. Salkey did not assume responsibility for and made no contribution to Shamar's medical bills, funeral costs, headstone or coffin. Salkey did not claim that he paid rent, utility bills, or for any other items required for Shamar. Salkey alleged that he came into contact with Shamar when he visited Wright. He does not appear to have been involved in any decision whatsoever involving the circumstances of Shamar's brief life. Salkey signed a waiver and consent on February 5, 1999.

Wright petitioned the Surrogate's Court for leave to settle Shamar's wrongful death claims. She claimed that, based upon

EPTL 4-1.4, Salkey was disqualified from receiving any share of the proceeds since he had failed or refused to support Shamar. She also submitted the waiver and consent signed by Salkey in which he waived his rights to any settlement proceeds and consented to their distribution to Wright. The Surrogate denied Wright's application to deem the waiver valid and ordered a trial based upon objections filed by Salkey. Salkey alleged that he had in fact supported Shamar and had been misled into signing the waiver and consent.

With respect to Salkey's execution of the waiver and consent, he bears an initial burden of articulating a claim of good cause to set aside the waiver based on " 'fraud, collusion, mistake, accident, or some other ground of the same nature' " (*Matter of Frutiger*, 29 NY2d 143, 150, quoting *Campbell v Bussing*, 274 App Div 893). Salkey chose not to read the waiver and consent thus he chose to forego any questions about the document and the consequences of his signature. There is no indication that Wright lied or actively misled Salkey about the waiver's meaning or effect. Salkey has simply failed to meet his initial burden to demonstrate that there is any material fact in dispute regarding the execution of his waiver and consent.

Regarding Salkey's claims that he provided support to or on behalf of Shamar, Salkey submitted insufficient proof. Until two weeks before Shamar's death, Salkey denied paternity. While Wright specifically denied receiving any support from Salkey, his allegations of providing cash to Wright are vague and unsubstantiated. Salkey is unable to explain with any detail what support he provided Shamar with the sole exception of money provided to his sister who babysat the infant, as to which there is no affidavit from the sister. Salkey's conclusory statements are insufficient to create an issue of fact as to whether he provided support (*Matter of Baecher*, 198 AD2d 221). Concur—Sullivan, P. J., Nardelli, Wallach, Lerner and Buckley, JJ.