[4 NYS3d 807]

329 UNION BUILDING CORP., Appellant, v JOHN LoGUIDICE et al., Respondents.

Supreme Court, Appellate Term, Second Department,
2d, 11th and 13th Judicial Districts, January 15, 2015

### APPEARANCES OF COUNSEL

*Rosen Livingston & Cholst, LLP,* New York City (*Andrew J. Wagner* of counsel), for appellant.

*Wenig Saltiel LLP,* Brooklyn (*Meryl L. Wenig* of counsel), for respondents.

### OPINION OF THE COURT

MEMORANDUM.

Ordered that, on the court's own motion, the appeals are consolidated for purposes of disposition; and it is further, ordered that the order dated April 4, 2013 is affirmed, without costs, and, upon searching the record, summary judgment is awarded to occupants dismissing the nonpayment petition; and it is further, ordered that the order entered August 21, 2012 is affirmed, without costs.

In May 2008, landlord commenced a summary proceeding, pursuant to RPAPL 713 (11), to remove John LoGuidice and his siblings, Gaetano LoGuidice and Rose LoGuidice (collectively occupants), on the ground that John LoGuidice was a superintendent whose employment had been terminated. The petition alleged that the apartment was exempt from rent stabilization because it was occupied by a superintendent to whom the apartment was provided as part of his compensation without the payment of rent. In their answer, occupants asserted that one of the occupants (Rose LoGuidice) had been a rent-stabilized tenant prior to John LoGuidice's employment as superintendent. Although landlord initially asserted that occupants had never been tenants and that they had been given the apartment only so long as John LoGuidice was an employee of landlord, landlord later acknowledged that, prior to the period of employment, occupant Rose LoGuidice had been a rent-stabilized tenant in the apartment paying a rent of $260 per month.

On March 4, 2010, the parties, represented by counsel, entered into a stipulation settling the RPAPL 713 (11)

proceeding. The stipulation provided, among other things, that landlord would offer occupants a lease at a legal rent of $1,800 a month and a preferential rent of $1,200 a month; that the total arrears outstanding from May 2008 through March 2010 were $27,600 ($1,200 × 23 months), less a $3,000 payment, for a balance owed of $24,600; that occupants can afford to pay only $600 per month and do not have the funds to pay the arrears; that occupants were in the process of applying for SCRIE (senior citizen rent increase exemption) benefits and would apply for a one-shot deal; that, so long as occupants acted with due diligence and documented their efforts to obtain assistance every 30 days, and paid landlord $600 per month commencing November 2009, landlord would forbear from serving a rent demand for 180 days; that occupants waived the laches defense in any nonpayment proceeding; and that, in the event of a default, landlord could serve a rent demand and commence a nonpayment proceeding.

Within several hours after executing the stipulation, the attorney who represented occupants died. In June 2010, landlord's counsel moved to restore the matter to the calendar, since, after he had received no status updates from occupants' attorney, he had investigated and learned of occupants' counsel's death. In an order dated September 8, 2010, the Civil Court appointed a guardian ad litem (GAL) for occupant John (sic) LoGuidice. (The parties appear to acknowledge that the GAL was in fact appointed for occupant Gaetano LoGuidice.)

On December 1, 2010, occupants (without the assistance of counsel), the GAL, and landlord entered into a stipulation which provided, among other things, that the March 4, 2010 stipulation remained in effect; that the 180-day moratorium for serving a rent demand would be extended to February 4, 2011 provided that occupants continued to pay $1,000 per month; and that occupants would sign a lease upon the terms set forth in the March 4, 2010 stipulation within 20 days of receiving it. Occupants never signed the lease.

In April 2011, landlord commenced a nonpayment proceeding against occupants, alleging that they had promised to pay $1,200 per month and that they owed that sum for each month from May 2008 through October 2009, a $600 per month balance for November 2009 through November 2010, and a $200 per month balance for December 2010 through April 2011. In that proceeding, landlord moved for summary judgment awarding it possession and $40,400, claiming that it was entitled to a

negotiated first rent after the period of employment had terminated and that the stipulation should be enforced. Occupants claimed, among other things, that landlord should be bound by the $260 rent that they had paid before the period of employment. By order dated February 1, 2012, subsequently reissued April 4, 2013, the Civil Court denied landlord's motion, finding that there were issues of fact as to the existence of a lease. Landlord appeals from this order.

In May 2012, occupants moved, in the RPAPL 713 (11) proceeding, to substitute Jeffrey Saltiel, Esq., who was Gaetano LoGuidice's GAL in the nonpayment proceeding, as his GAL in the RPAPL 713 (11) proceeding; to allow Saltiel to appear as pro bono counsel for occupants; and to vacate the March 4, 2010 stipulation. (The motion was subsequently amended on consent to seek to vacate both stipulations.) In support of the motion, occupants and Saltiel asserted, among other things, that occupants were senior citizen siblings who took care of each other; that they had been living in the apartment for 35 years; that landlord's attorney had told them that they would have no problem getting SCRIE, and they had believed him; that they had noticed, on the day of the March 4, 2010 stipulation, that the attorney representing them was winded and distracted, and seemed to be in pain, and when they asked him about the stipulation, he told them to "just sign it" without explaining it to them; that, as a result of the stipulation, their rent had skyrocketed from $260 to $1,200 a month; that their rent-regulated status had continued while they were employees; and that the Department of Social Services does not give one-shot deals for $24,600.

Landlord opposed the motion, arguing, among other things, that Mr. Saltiel had been appointed GAL only in the nonpayment proceeding and lacked standing to appear in the RPAPL 713 (11) proceeding; that occupants' motion was untimely; that landlord is owed over $30,000; and that occupants failed to show grounds sufficient to set aside the stipulations.

By order entered August 21, 2012, the Civil Court granted occupants' motion in the RPAPL 713 (11) proceeding. The court noted, among other things, that it was undisputed that occupants' last rent was $260; that occupants were free to retain Mr. Saltiel; that the motion was timely in view of landlord's commencement of the nonpayment proceeding; that occupants retained their rent-stabilized status; that a waiver of a benefit of rent stabilization is prohibited; that occupants' status as

rent-stabilized tenants was a complete defense to the RPAPL 713 (11) proceeding; that there was no privity of contract during the period prior to the execution of the first stipulation; and that, when they had entered into that stipulation, occupants had been advised that their rent would be paid. Taking into account all of the circumstances, including the death of occupants' attorney within hours after signing the first stipulation, the failure to explore occupants' rent-stabilized status, the agreement that occupants retroactively owed $24,600, the mistaken advice, and the length of the residency, the court set aside the stipulations as unduly harsh and unjust. Landlord appeals from this order as well.

On appeal, landlord, among other things, renews the arguments it made in the Civil Court, asserting that the stipulations were not the product of mistake or misadvice and were a reasonable settlement. Landlord now claims that because the exemption from rent stabilization lasted more than four years, landlord was entitled to a negotiated first rent pursuant to Rent Stabilization Code (RSC) (9 NYCRR) former § 2526.1 (a) (3) (iii),* which provided, at all relevant times, in pertinent part:

> "Where a housing accommodation is vacant or temporarily exempt from regulation pursuant to section 2520.11 of this Title on the base date, the legal regulated rent shall be the rent agreed to by the owner and the first rent stabilized tenant taking occupancy after such vacancy or temporary exemption, and reserved in a lease or rental agreement."

Landlord also argues that it was entitled to summary judgment in the nonpayment proceeding, based on the stipulations.

We turn first to the order denying landlord's motion for summary judgment in the nonpayment proceeding. In our view, that order should be affirmed and, upon a search of the record, summary judgment should be awarded to occupants dismissing the nonpayment petition.

█ It is well settled that a nonpayment proceeding lies only where there is a landlord-tenant relationship between the parties and there has been a default "in the payment of rent, pursuant to the agreement under which the premises are held" (RPAPL 711 [2]; *see e.g. Putnam Realty Assoc., LLC v Piggot*, 44 Misc 3d 141[A], 2014 NY Slip Op 51306[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]; *Strand Hill Assoc. v Gassenbauer*, 41 Misc 3d 53 [App Term, 2d Dept, 2d, 11th &

---

* RSC § 2526.1 (a) (3) (iii) was subsequently amended effective January 8, 2014.

13th Jud Dists 2013]; *615 Nostrand Ave. Corp. v Roach,* 15 Misc 3d 1 [App Term, 2d Dept, 2d & 11th Jud Dists 2006]; *see also Kimball Ave. Assoc., LLC v Walsh,* 43 Misc 3d 135[A], 2014 NY Slip Op 50660[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2014]). Here, the first stipulation of settlement was not executed until March 4, 2010, and, before that time, there was no agreement by occupants to pay $1,200 per month. Moreover, the March 4, 2010 stipulation did not constitute an agreement to pay $1,200 going forward, but rather provided that landlord would offer occupants a lease at that amount, and it is undisputed that no lease requiring occupants to pay $1,200 per month was ever signed. In these circumstances, a nonpayment proceeding cannot be maintained for the amount sought by landlord (*see Kimball Ave. Assoc., LLC,* 43 Misc 3d 135[A], 2014 NY Slip Op 50660[U]). The fact that the parties stipulated that, upon a default, landlord could serve a rent demand and commence a nonpayment proceeding does not change this result, as summary proceedings can be created only by the legislature, not by the parties.

Turning to the Civil Court's order in the RPAPL 713 (11) proceeding, we affirm the order essentially for the reasons stated by the Civil Court. We find no impediment to the court's allowing Mr. Saltiel to appear as counsel for occupants or as GAL for Gaetano LoGuidice. (No claim is raised that he could not function in both capacities simultaneously.) Moreover, the Civil Court correctly held that Rose LoGuidice's status as a rent-stabilized tenant before the period of employment (*see 530 Second St. Co., L.P. v Alirkan,* 37 Misc 3d 52 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]) provided a complete defense to the RPAPL 713 (11) proceeding, as landlord failed to allege or prove that there was an agreement by occupants to surrender their rent-stabilized status (*Clearview Apt. Assoc., LP v Ocasio,* 17 Misc 3d 23 [App Term, 2d Dept, 2d & 11th Jud Dists 2007]). Furthermore, contrary to landlord's contention, RSC former § 2526.1 (a) (3) (iii), which applied to a first rent-stabilized tenant taking occupancy after a temporary exemption, was inapplicable to occupants, whose rent-stabilized status preexisted the period of employment (*see Goldman v Malagic,* 45 Misc 3d 37 [App Term, 1st Dept 2014]; *Blumenthal v Chung Fu Lam,* 17 Misc 3d 233 [Civ Ct, NY County 2007]). Under all the circumstances, including the death of occupants' attorney shortly after the execution of the first stipulation and occupants' inadvisable waivers of their complete defense to the

8

proceeding and of their rent-stabilization rights, the Civil Court providently exercised its discretion in vacating the stipulations as harsh and unjust (*see Matter of Frutiger*, 29 NY2d 143, 149-150 [1971]; *Cabbad v Melendez*, 81 AD2d 626 [1981]), notwithstanding the delay in occupants' moving for that relief.

PESCE, P.J., ALIOTTA and SOLOMON, JJ., concur.