OPINION OF THE COURT
Memorandum.
Ordered that the order, insofar as appealed from, is modified by striking the provisions directing landlord to re-serve the re *13 newal offer upon tenant, and tenant to sign the renewal offer within 10 days of its receipt; as so modified, the order, insofar as appealed from, is affirmed, without costs.
In this holdover proceeding, landlord appeals from so much of an order of the Civil Court as denied landlord’s motion for summary judgment, granted tenant’s cross motion to dismiss the petition, directed landlord to re-serve a renewal offer upon tenant, and directed tenant to sign the renewal offer within 10 days of its receipt.
The record establishes that landlord offered tenant a rent-stabilized renewal lease on June 1, 2010 to commence September 16, 2010 and that, on June 10, 2010, tenant returned the renewal offer, having checked off the box indicating that tenant would not be renewing the lease and that she intended to vacate the apartment. Some time thereafter, tenant notified landlord that she had changed her mind and wanted to remain in the apartment, but landlord did not agree to allow tenant to renew the lease and so informed tenant by letter dated September 1, 2010. Landlord had previously commenced a nonpayment proceeding against tenant by petition dated July 26, 2010. On September 7, 2010, the parties executed a so-ordered stipulation in the nonpayment proceeding, in which it was agreed, among other things, that the petition was amended to include all rent due through September 30, 2010; that landlord would have judgment for the arrears; that tenant would make scheduled payments; that if tenant vacated the apartment by October 8, 2010, landlord would waive the arrears; and that the stipulation was without prejudice to landlord’s right to maintain a holdover proceeding. By order dated March 21, 2011, the Civil Court stayed execution of the nonpayment warrant until March 31, 2011 for tenant to make payment, which payment was apparently made. The record also reveals that landlord continued to accept bimonthly Department of Social Services (DSS) checks on tenant’s behalf in April 2011, prior to commencing this holdover proceeding in May 2011, following service of a 15-day notice purporting to terminate the tenancy as of April 30, 2011. Landlord moved for summary judgment in this proceeding, arguing that the lease had expired and had not been renewed. Tenant cross-moved to dismiss the petition, arguing that, in view of landlord’s collection of rents subsequent to the lease expiration, landlord could not now claim that there was no landlord-tenant relationship after September 15, 2010, and that equity should intervene to protect tenant against a forfeiture of *14 her long-term rent-stabilized tenancy. Tenant’s counsel also advised the court that tenant was an adult incapable of defending her own rights and asked for the appointment of a guardian ad litem (GAL). The Civil Court denied the request for a GAL, held that the lease had properly been terminated but that tenant should be granted equitable relief, denied landlord’s motion for summary judgment, granted tenant’s cross motion to dismiss the petition, and directed landlord to re-serve the renewal offer and tenant to sign the renewal offer within 10 days of its receipt.
The grounds for evicting a rent-stabilized tenant are set forth in part 2524 of the Rent Stabilization Code (RSC) (9 NYCRR). Contrary to landlord’s contention, a tenant’s statement on a renewal notice of an intention not to renew the lease is not a ground for eviction that is separate and distinct from the RSC § 2524.3 (f) ground of refusal to renew an expiring lease (see Shuhab HDFC v Allen, 37 Misc 3d 1223[A], 2012 NY Slip Op 52144[U] [Civ Ct, NY County 2012]; but cf. 68 Assoc., LLC v Jensen, 4 Misc 3d 127[A], 2004 NY Slip Op 50621[U] [App Term, 1st Dept 2004]). Were it to be found that tenant, within the applicable 60-day period in which to respond to the renewal offer (see RSC [9 NYCRR] § 2523.5 [a]), refused to sign the renewal lease, landlord could properly maintain a summary proceeding and obtain a final judgment on that ground. It was error for the Civil Court to deny landlord a final judgment on equitable grounds, since RPAPL 753 (4) provides for a 10-day postjudgment period in which to cure the breach (see Fairbanks Gardens Co. v Gandhi, 168 Misc 2d 128 [App Term, 2d Dept, 2d & 11th Jud Dists 1996], affd for reasons stated below 244 AD2d 315 [1997]; Barmat Realty Co., LLC v Quow, 39 Misc 3d 151[A], 2013 NY Slip Op 50977[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]). As we determine the appeal on a different basis, we need not address landlord’s claim, in effect, that tenant should be denied a postjudgment cure period based on an estoppel, other than to note that, even if the doctrine of estoppel could apply, landlord has failed to show that it was prejudiced by tenant’s change of mind.
Tenant’s motion to dismiss was predicated, in part, on landlord’s acceptance of rent after the expiration of the lease. As noted above, the record shows that landlord continued to maintain the nonpayment proceeding after the lease had expired on September 15, 2010 and did not commence this holdover proceeding until May 2011. In the nonpayment proceeding, the stipulation executed on September 7, 2010 amended the peti *15 tion to include all rents due through September 30, 2010, which is beyond the September 16, 2010 lease expiration date, and landlord was awarded a final judgment for the arrears. By order dated March 21, 2011, the Civil Court stayed execution of the nonpayment warrant through March 31, 2011 for payment of the arrears, which payment was apparently made. Thereafter, according to landlord’s rent ledger, landlord continued to accept bimonthly DSS rent checks in April 2011, before commencing this proceeding in May 2011. As a result of landlord’s acceptance of rents, landlord cannot now claim that no tenancy existed after the September 16, 2010 expiration of the lease. We need not reach the issue of whether tenant was entitled to be served with a 30-day notice, which was not done, or entitled to a renewal lease (see Georgetown Unsold Shares, LLC v Ledet, 35 Misc 3d 137[A], 2012 NY Slip Op 50818[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]), as, in either case, this proceeding must be dismissed. However, as there was no authority for the Civil Court, upon dismissing the holdover proceeding, to enjoin landlord to re-serve a renewal offer, and to order tenant to sign it, those provisions of the order are stricken (see Tobin v Beaaro, Inc., 31 Misc 3d 127[A], 2011 NY Slip Op 50446[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]; Topaz Realty Corp. v Morales, 9 Misc 3d 27 [App Term, 2d Dept, 2d & 11th Jud Dists 2005]).
We note that, upon being advised by tenant’s counsel that tenant was an adult incapable of protecting her own rights, it was the duty of the court to determine if this were the case and, if so, to appoint a guardian ad litem (see Sengstack v Sengstack, 4 NY2d 502, 509 [1958]; Sarfaty v Sarfaty, 83 AD2d 748 [1981]; Barone v Cox, 51 AD2d 115 [1976]). A court may not shut its eyes to the special need of protection that such a litigant has (Resmae Mtge. Corp. v Jenkins, 115 AD3d 926 [2014]; Shad v Shad, 167 AD2d 532 [1990]; see Sengstack, 4 NY2d at 509). At the direction of this court (2013 NY Slip Op 83210[U] [Aug. 16, 2013]), a hearing was held by the Civil Court (Thomas M. Fitzpatrick, J.), at which simple questions by the court revealed that tenant was in need of a GAL, and one was appointed by order dated November 17, 2013. In view of this November 17, 2013 determination, any proceedings adverse to tenant would have, in any event, been vacated by this court (see Cowell v Dickoff, 60 AD3d 716 [2009]; Sarfaty, 83 AD2d 748).
Pesce, P.J., Aliotta and Elliot, JJ., concur.