Shalimar Leasing, LP v Medina (2021 NY Slip Op 21270)

Shalimar Leasing, LP v Medina

2021 NY Slip Op 21270 [73 Misc 3d 22]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 24, 2021

[*1]

Shalimar Leasing, LP, Appellant,
v
Ramona Medina et al., Respondents, et al., Undertenants.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, October 8, 2021

APPEARANCES OF COUNSEL

Daniels Norelli Cecere & Tavel, P.C. (George H. Norelli, Denise May and Sherrie A. Taylor of counsel) for appellant.
Queens Legal Services (Melissa Banks and Nikki Ramroop of counsel) for respondents.

{**73 Misc 3d at 23} OPINION OF THE COURT

Memorandum.

Ordered that the order is reversed, without costs, and occupant's motion to vacate the stipulation of settlement is denied.
Landlord commenced this holdover proceeding to recover possession of a rent-stabilized apartment on the ground that the tenant of record was not using the apartment as her primary residence. Occupant, Mercedes Torres, appeared and asserted her right to succeed to the tenancy as a nontraditional family member (see Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1]). Landlord and occupant entered into a so-ordered stipulation (Malaika Scott-McLaughlin-Bland, J.) whereby landlord agreed to permit occupant to remain in possession of the apartment for six months and occupant agreed to pay arrears in use and occupancy as well as use and occupancy for six months, and to vacate at the end of the six months. Soon after, occupant moved to vacate the stipulation on the ground that she had not understood that she was waiving her succession claim. In an order dated March 4, 2020, the Civil Court (Malaika Scott-McLaughlin-Bland, J.) granted occupant's motion, finding that occupant had "inadvisedly" entered into the stipulation, that the stipulation was unduly harsh and that occupant has a colorable succession claim.
[*2]
Landlord commenced this proceeding after serving notice of its intent not to renew tenant's lease on the ground that she{**73 Misc 3d at 24} did not reside in the rent-stabilized apartment, but rather lived in Florida.[FN*] The petition alleged that the apartment was occupied by Mercedes Torres, the respondent on this appeal. Ms. Torres, represented by counsel, answered, asserting as an affirmative defense that she was a family member of tenant and continuously co-resided in the apartment with tenant for such a period as to succeed to the tenancy. The verified answer contained a certification that it had been interpreted to her in Spanish.
Prior to entering into the stipulation which is the subject of this appeal, Ms. Torres, represented by counsel, entered into several stipulations, including one to produce succession documents and another to adjourn the proceedings for discovery motion practice. At all proceedings, an interpreter was provided for Ms. Torres and her counsel was present.
Following multiple pretrial conferences, the attorneys for the parties in the presence of their clients entered into a stipulation which resolved this matter. Throughout the negotiation of the stipulation at issue, a court interpreter was present to aid counsel with discussion of the merits of the case and the potential pitfalls of trial with Ms. Torres. Once the parties had an agreement, the Civil Court, with the assistance of an official interpreter, spoke with Ms. Torres in open court. The court informed Ms. Torres that "she was agreeing to vacate the apartment and she stated that she understood the content of the stipulation and entered into it voluntarily." Ms. Torres then made one payment in accordance with the stipulation.
It was not until after speaking with a tenant organizer in the building that Ms. Torres moved to vacate the stipulation. Ms. Torres does not dispute that the stipulation was read to her in her preferred language, Spanish, prior to its signing. Rather, she alleges that she did not understand what she was signing. Under the circumstances presented, Ms. Torres's proffered ground for vacating the stipulation was insufficient to warrant the granting of her motion.
"Stipulations of settlement are favored by the courts and not lightly cast aside" (Hallock v State of New York, 64 NY2d 224, 230 [1984]). However, a stipulation may be set aside where there is proof that the stipulation was tainted by fraud, collusion, mistake, accident or other ground sufficient to invalidate a contract (see Hallock v State of New York, 64 NY2d at 230;{**73 Misc 3d at 25} Matter of Frutiger, 29 NY2d 143, 149-150 [1971]). Moreover, courts may relieve parties from the consequences of a stipulation "if it appears that the stipulation was entered into inadvisedly or that it would be inequitable to hold the parties to it" (Matter of Frutiger, 29 NY2d at 150 [internal quotation marks omitted]).
In this case, Ms. Torres makes no allegation of fraud, collusion, mistake, or accident (see id. at 150), nor does she challenge the sufficiency of the court's allocution or the accuracy of the stipulation's interpretation. Here, her bare, self-serving assertions that she lacked understanding and, thus, that she inadvisedly entered into the stipulation are simply not enough to invalidate her agreement (see Weissman v Weissman, 42 AD3d 448 [2007] [plaintiff's argument that she lacked the mental capacity to understand and agree to a stipulation's terms was insufficient to vacate the stipulation]).
Moreover, any claim that she was unaware of her potential succession rights is belied by the record. From the inception of these proceedings up until the settlement, Ms. Torres was [*3]represented by the same attorney, who interposed an answer on her behalf that included the affirmative defense of succession rights. Indeed, Ms. Torres was afforded the opportunity to produce proof in support of those rights when the proceedings were initially adjourned. At no time in the 10 months preceding the stipulation of settlement did Ms. Torres complain that she was unable to communicate with her attorney or that she did not understand the nature of the proceedings. It was not until after the stipulation was signed and a tenant organizer in her building reviewed the stipulation that Ms. Torres expressed dissatisfaction with its terms. On this record, we see no basis to unravel a binding, written stipulation subscribed by both parties, their attorneys, the official court interpreter, and the court (see Hallock v State, 64 NY2d at 230; Wil Can [USA] Group, Inc. v Shen Zhang, 73 AD3d 1166 [2010]).
Accordingly, the order is reversed and occupant's motion to vacate the stipulation of settlement is denied.

Weston, J. (concurring in the following memorandum). While I agree with the majority's decision to uphold the stipulation in this case, I write separately to emphasize the importance stipulations of settlement serve in the swift resolution of cases and in ensuring finality in the court process. As the majority notes, stipulations of settlement are judicially{**73 Misc 3d at 26} favored by the courts, and will not lightly be cast aside (see Hallock v State of New York, 64 NY2d 224, 230 [1984]), particularly when the stipulation is executed by two attorneys in open court and in the presence of the clients (see Chae Shin Oh v Jeannot, 160 AD3d 701 [2018]). Only where cause exists sufficient to invalidate a contract "will a party be relieved from the consequences of a stipulation made during litigation" (Nigro v Nigro, 44 AD3d 831, 831 [2007]). Open court stipulations, like this one, warrant "strict enforcement," which not only "serves the interest of efficient dispute resolution," but the "management of court calendars and integrity of the litigation process" as well (id. [internal quotation marks omitted]). While I recognize that a court retains the discretion to relieve the parties from the consequences of a stipulation that is ill-advised or inequitable (see Matter of Frutiger, 29 NY2d 143, 150 [1971]), it was an abuse of discretion to do so here.
Ms. Torres voluntarily and knowingly executed the stipulation of settlement not only with the benefit of counsel, but with the assistance of an official court interpreter, who was present at all times to explain the settlement agreement prior to its execution. Other than expressing "buyer's remorse," Ms. Torres points to nothing in the record that would warrant vacating the stipulation. "[A]n agreement will not be overturned merely because it was improvident, not the most advantageous to the dissatisfied party, or because a party had a change of heart" (Warren v Rabinowitz, 228 AD2d 492, 493 [1996]). In other words, an otherwise sage agreement is not so easily converted into an "ill-advised" one.
To set aside a stipulation under these circumstances not only undermines our long-standing jurisprudence favoring two-attorney stipulations, but "invites destruction of the process of open-court settlements, for every such settlement would be liable to subsequent rescission by the simple expedient of a litigant's self-serving assertion, joined in by his attorney" (Hallock v State of New York, 64 NY2d at 232 [internal quotation marks omitted]). Stipulations of settlement should rarely be disturbed, as they encourage the swift resolution of [*4]cases and ease the burden on our already strained court system. To vacate the stipulation in this case as "ill-advised" effectively closes the door on a party's ability to participate in negotiations with the expectation and understanding that their agreement will be upheld (see Bernstein v Elinor, 5 Misc 3d 139[A], 2004 NY Slip Op 51632[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2004]). Moreover, it subjects even the most ironclad stipulations—such {**73 Misc 3d at 27}as this one—to the whims of a client and the unfettered discretion of the court. In the absence of any proof that Ms. Torres's agreement was the product of mistake, fraud, collusion, accident or other grounds sufficient to invalidate a contract, the agreement is enforceable.
Aliotta, P.J., and Elliot, J., concur; Weston, J., concurs in a separate memorandum.

Footnotes

Footnote *:Tenant did not appear in this proceeding.